**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Stephen Francis McLAUGHLIN,**
**Defendant-Appellant.**

**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Michael Lawrence MILLER,**
**Defendant-Appellant.**

**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Michael William COYNE,**
**Defendant-Appellant.**

**Nos. 75–1179, 75–1257 and 75–1224.**

United States Court of Appeals,
Ninth Circuit.

Nov. 7, 1975.

Rehearing and Rehearing En Banc
Denied in No. 75–1179,
Dec. 31, 1975.

**518**

Charles T. McCutcheon (argued), San Diego, Cal., for McLaughlin.

Leif Tessem, San Diego, Cal., for Coyne.

James P. Hagerstrom, San Diego, Cal., for Miller.

Jeffrey Arbetman, Asst. U. S. Atty. (argued in 75–1179), San Diego, Cal., for defendant-appellee.

## OPINION

Before WALLACE and SNEED, Circuit Judges, and CRARY,* District Judge.

SNEED, Circuit Judge:

Defendants Stephen McLaughlin, Michael Miller and Michael Coyne were found guilty of possession with intent to distribute 378 pounds of marijuana in violation of 21 U.S.C. 841(a)(1). The defendants waived a trial by jury and submitted the matter upon signed stipulation to the district court judge. They allege in this appeal that the lower court erred in denying their motion to suppress evidence and their motion to reveal the identity of the informant.

We affirm the actions of the lower court.

On July 2, 1974, special agents of the Drug Enforcement Agency received a tip from a confidential source that McLaughlin was from time to time disbursing quantities of narcotics, marijuana and cocaine from his home. On July 5, 1974, this same source advised that a quantity of marijuana would be removed from McLaughlin's house during that day. This source previously had given accurate information regarding narcotics buyers on four separate occasions.

Surveillance of the McLaughlin residence began at approximately noon on July 5, 1974. At approximately 1:45 p.

---

* Honorable E. Avery Crary, United States District Judge for the Central District of California, sitting by designation.

m. a pickup truck arrived at the residence and a package taken therefrom was placed in the truck. After some evasive action[1] on the part of the pickup truck, an officer of the County Narcotics Task Force, which was working with the federal officers, attempted to stop the truck by pulling alongside of it and showing the occupants his badge. They responded by speeding away from the agent's vehicle. During the course of their flight, they threw out the window what appeared to be, and was later found to be, four kilos of marijuana. The occupants were soon apprehended and the marijuana retrieved. The agents at the McLaughlin residence were notified of these events.

Meanwhile, a vehicle driven by Coyne stopped at the McLaughlin residence. Coyne carried a package from the house to the trunk of his car. Upon approaching Coyne's vehicle, the agents could see, in plain view, an open brown paper bag containing two kilos of marijuana. Coyne was arrested outside the house alongside his car.

Concurrent with Coyne's arrest, other agents knocked at the door of the McLaughlin residence, announced their presence, and demanded entrance. This action was taken pursuant to a decision to secure the premises, to protect the contraband from destruction, and to arrest the occupants. While knocking, the agents heard shuffling from within and proceeded to enter the house. In the process of looking for fleeing suspects the agents saw kilos of marijuana within plain view. Pursuant to instructions from the agent in charge, the residence was not searched pending the arrival of a warrant. It was obtained by 6:00 p. m. and a search was conducted at that time.

Defendants contend that the court erred in failing to disclose the identity of the confidential source. They also claim that the stop of the pickup truck and the entry into the McLaughlin residence were unlawful and that the resulting ev-

idence should have been suppressed. We shall discuss each of these contentions.

## I. *Identity of Informant.*

■ The trial judge conducted an *in camera* hearing regarding the disclosure of the identity of the informant of which a record was made and sealed. As a result he concluded that the defendant's burden to show the need for the disclosure had not been discharged. No showing that a necessary and useful purpose would be served by disclosure was made. *See United States v. Alvarez,* 472 F.2d 111 (9th Cir.), *cert. denied,* 412 U.S. 921, 93 S.Ct. 2742 (1973). More specifically, the trial judge concluded that the informant was neither a participant nor a percipient witness and that the revelation of his identity would place his life in danger. As a result of these findings the trial judge declined to disclose the identity of the informant. We hold that he did not err. *Cf. United States v. Anderson,* 509 F.2d 724, 730 (9th Cir.), *cert. denied,* 420 U.S. 910, 95 S.Ct. 831, 42 L.Ed.2d 840 (1975). We are convinced that there exist only speculation by the defendants that the testimony of the informant would be exculpatory. This is not enough. *United States v. Kelly,* 449 F.2d 329, 330 (9th Cir. 1971).

## II. *The Marijuana Thrown From the Truck.*

■ The four kilos of marijuana thrown from the pickup truck are not inadmissible by reason of a *Wong Sun* taint. *See Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). It is obvious that had the marijuana been thrown from the truck prior to the attempt to stop it by the County Officer it would have been admissible as plainly visible abandoned property. *Hester v. United States,* 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924). Under these circumstances there is neither search nor seizure, illegal or otherwise. *United States v. Wilson,* 492 F.2d 1160, 1161 (5th Cir.), *cert. denied,* 419 U.S. 858, 95 S.Ct.

---

1. Agents testified that they saw the truck make a U-turn and accelerate.

106, 42 L.Ed.2d 92 (1974); *United States v. Zimple*, 318 F.2d 676, 678 (7th Cir.) *cert. denied*, 375 U.S. 868, 84 S.Ct. 128, 11 L.Ed.2d 95 (1963).

The attempted stop does not alter this conclusion. Only by holding that this attempted stop was not supported by founded suspicion would there be arguably a *Wong Sun* taint. However, this is an issue we need not confront, because we hold that the attempted stop was based on founded suspicion. *See, e. g., United States v. Brignoni-Ponce*, 499 F.2d 1109 (9th Cir. 1974) (en banc), *aff'd* June 30, 1975, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607. The appearance of the pickup truck at the McLaughlin residence in a manner that tended to confirm the information given by the informant, the placing of a package taken from the residence in the truck and its evasive action remove this attempted stop from those supported only by "lucky hunches."

III. *The Warrantless Entry.*

■ We also hold that the kilos of marijuana within plain view after entry into the McLaughlin residence by the officers were properly admissible evidence. To reach this conclusion it is necessary to establish either that there was probable cause to arrest those within the McLaughlin residence and that a warrantless entry to accomplish a warrantless arrest based on probable cause is proper, or that the warrantless entry under the circumstances of this case was based on probable cause and justified by exigent circumstances. This Circuit, on several occasions, has avoided reaching the issue whether a warrantless entry to effectuate an arrest based on probable cause contravenes the Fourth Amendment. *See United States v. Curran*, 498

F.2d 30 (9th Cir. 1974); *United States v. Bustamante-Gamez*, 488 F.2d 4, 8 (9th Cir. 1973), *cert. denied*, 416 U.S. 970, 94 S.Ct. 1993, 40 L.Ed.2d 559 (1974). The Supreme Court also has not as yet spoken definitively on this issue.[2] *Coolidge v. New Hampshire*, 403 U.S. 443, 476, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). We, also, will avoid the issue and proceed to determine whether the warrantless entry under the circumstances of this case was based on probable cause and justified by exigent circumstances. We hold that probable cause existed and that exigent circumstances justified the entry.

The *modus operandi* employed by the officers in this case was not unusual and was in fact similar to that used in *United States v. Curran, supra.* It involves a tip from a reliable informant, surveillance, the commencement of the distribution foretold by the informant, the halting and arrest of the distributees, the knocking on the door of the residence, the announcement of presence, the entry followed by arrest, the securing of the premises and the seizing of marijuana in plain view. Thereafter, a search of the premises pursuant to a warrant was made. As we did in *Curran*, we find this procedure as implemented under the facts and circumstances of this case not inconsistent with the Fourth Amendment.

Probable cause for the entry clearly existed. The informant had given accurate information on four previous occasions and his information in this instance was corroborated by surveillance. *See Draper v. United States*, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959). It was established by the officers that McLaughlin resided at the residence under surveillance. Marijuana had been thrown from the truck that was followed

---

**2.** On October 14, 1975 the Supreme Court granted certiorari in the case of *United States v. Santana*, —— U.S. ——, 96 S.Ct. 185, 46 L.Ed.2d 121. The issues involved in that appeal are (1) is an arrest warrant required to make an arrest, when there is probable cause, of an individual standing in plain view *in the doorway of his/her residence* and (2) if not,

may the police execute the warrantless arrest if the suspect retreats into the residence after being warned by the police of their authority and purpose. Although the issue of warrantless entry to effectuate a warrantless arrest is not clearly the issue, it should be an integral part of the Court's disposition of this case.

after departing from the McLaughlin residence, and Coyne had been arrested outside the McLaughlin residence after carrying a brown paper bag containing marijuana from the residence to his car. This is certainly enough to establish probable cause for entry.

The more difficult issue is whether the Fourth Amendment requires that the officers continue their surveillance and interceptions and arrest of distributees until a proper warrant to enter and search is obtained. We think not. The exigent circumstances justifying an entry here are substantially the same as in *Curran*. That is, to delay the entry until the warrant was obtained involved a substantial risk that evidence would be removed or destroyed and increased the likelihood that innocent persons would be harmed or significantly inconvenienced. Coyne's arrest made it likely that those in the McLaughlin residence would discover that they were under surveillance. This would lead them to destroy or remove the evidence, if possible. Simultaneously, they would canvass the possibilities of escape. The officers, on the other hand, could take their chances with respect to the destruction of the evidence, obtain reinforcements, and settle in for several hours of seige while awaiting the arrival of the warrant, or move quickly to arrest the occupants and to secure the premises and the evidence while awaiting the arrival of the warrant. We cannot accept the view that the Fourth Amendment requires that the officers pursue the former course. To do so would ignore the legitimate interests of the neighbors whose surroundings should not be impressed with a state of seige, innocent persons who might be injured accidently as a consequence of a large number of armed and mobile men, and the interest of the general public in efficient law enforcement and certain punishment for wrongdoers.

It, of course, should be understood that these exigent circumstances justify an entry to arrest and to secure the premises to the extent necessary to prevent the destruction or removal of the evidence. They, however, carry the officers no further. Nothing else is justified. That the officers recognized this is attested by the fact that a warrant was obtained prior to conducting a search of the residence.

Finally, we reject the notion that the officers either should have brought a warrant with them when they took up their surveillance of the McLaughlin residence, or made arrangements for the delivery of a warrant only shortly after probable cause came into being. It is by no means clear that probable cause adequate to justify a warrant existed prior to the pursuit of the pickup truck. Nor is it reasonable to require that magistrates be always present at the elbow of officers ready to produce a warrant only a few minutes after probable cause to arrest or enter comes into existence. Acquisition of a warrant takes time, as it should. Whether the delay must be incurred depends upon the presence, or no, of "exigent circumstances." Little more that is useful can be said. The absence of such circumstances is not indicated by the existence, as in this case, of a magistrate "on call."

Affirmed.