STATE OF HAWAII, Plaintiff-Appellant, *v.* GEORGE KEONAONA HOOK, Defendant-Appellee

NO. 6032

DECEMBER 20, 1978

RICHARDSON, C.J., KOBAYASHI, OGATA, MENOR AND KIDWELL, JJ.

OPINION OF THE COURT BY KIDWELL, J.

Defendant-appellee was charged with promoting a detrimental drug, in violation of HRS § 712-1247(1)(e). His motion to suppress all evidence seized from his premises was granted by the trial court. The State appeals.

The trial court made no finding of the facts upon which the suppression order was based. The testimony was in conflict in some respects, but the essential facts are not in dispute. We conclude that the suppression order was correct as to a portion but erroneous as to the remainder of the seized evidence.

The State's sole witness was a police officer, who testified that he went to the location of appellee's residence in re-

sponse to an anonymous tip that marijuana was being grown there. Appellee resided in one of the dwelling units of a duplex building which faced a similar duplex building across a concrete walkway, with a separation between the buildings of ten to twelve feet. The walkway led between the duplex buildings at right angles from the public street and also served a building in the rear which was not described. Each of the four dwelling units in the two duplexes was entered by way of a concrete stairway rising beside and parallel to the walkway. One of the dwelling units in each of the duplex buildings fronted on the street, with the other immediately adjoining to the rear. Appellee occupied one of the rear units. A small shed about eight feet high with a corrugated roof, the door of which was locked, was situated between appellee's unit and the walkway. There was no evidence with respect to the ownership of the area between the duplex buildings. The trial court obviously assumed that the area was private property, which assumption is sufficiently supported by permissible inferences to be accepted by us.

The officer testified that, while in his parked automobile on the public street, he observed and recognized the tops of marijuana plants growing in the rear of appellee's stairway and in the shed. Appellee did not dispute the presence of the plants, but denied their visibility from the street. After his first visit, the officer left the scene and returned about one and one-half hours later. He testified that he then observed appellee touching the plants, a fact which appellee denied. The officer obtained the assistance of other officers, and with them entered the area between the buildings about a half hour later. The officer arrested appellee, directed him to unlock the shed and seized the marijuana plants growing in the shed and beside the stairway. No warrant was obtained. The seized plants were the subject of the suppression order.

The factual circumstances resemble those which we considered in *State v. Dias*, 52 Haw. 100, 470 P.2d 510 (1970). There an officer observed activity in a passageway, located on private property between two apartment buildings, which led him to believe that drugs had been secreted in a hole in the wall above a washing machine positioned against one of the

buildings. An entry and search was made without a warrant, resulting in the discovery and seizure of a quantity of heroin in the washing machine and in the hole in the wall. We held that the test of whether the entry into private property to effect the seizure violated the constitutional guarantee against unreasonable searches and seizures was whether the defendants possessed "a reasonable expectation of freedom from governmental intrusions." The fact that the passageway was located upon private property was regarded as sufficient to establish an expectation of freedom from governmental intrusion on the part of the defendants, and thus to require that a warrant be obtained before a search might be conducted upon the premises, absent exigent circumstances or a search incident to an arrest.

However, *Dias* involved not only an entry into the private passageway but also a search to discover objects which were not in the plain view of the officer. It was the search with which the court was concerned in that case rather than the mere investigative entry. To the extent that *Dias* appeared to make determinative the fact that an entry on private property had occurred we consider that the emphasis was misplaced. We have ceased to regard an entry on private property as conclusively unreasonable within the meaning of the guarantee against unreasonable searches and seizures.

In *State v. Kaaheena*, 59 Haw. 23, 575 P.2d 462 (1978), we concluded that visual observations of the activity of defendants constituted an unreasonable search where they violated defendants' reasonable expectation of privacy. However, we treated as inconclusive the alleged fact that the position from which the officer made his observations was on private property. We pointed out that the presence or absence of a trespass on private property is not necessarily controlling in determining the reasonableness of a search although the nature of the ownership of the property entered upon remains a relevant fact in the inquiry. As we said:

> Instead of merely looking to whether the observer had trespassed onto private property, the inquiry now also concerns the nature and degree of privacy of the property involved.

59 Haw. at 27, 575 P.2d at 465.

In the present case, it is clear that the walkway between the buildings served at least four dwelling units. The entry by the officer into this common area to investigate possible criminal activity was of the same nature as that sanctioned in *Air Pollution Variance Board v. Western Alfalfa Corp.*, 416 U.S. 861 (1974). There a state health inspector without warrant entered the outdoor premises of defendant's plant and made visual observations of smoke being emitted from the plant's chimneys. He was not on premises from which the public was excluded. The invasion of defendant's privacy was termed "abstract and theoretical", and no violation of the fourth amendment was found. The smoke which the inspector observed was also visible from outside defendant's premises but the Court made it clear that the result did not depend on whether the inspector's observations could have been made without the entry.

In *G. M. Leasing Corp. v. United States*, 429 U.S. 338 (1977), the warrantless seizure of automobiles "on public streets, parking lots, or other open places" was upheld for the sole stated reason that no invasion of privacy was involved. The description of the parking lot on which two of the automobiles were seized makes it apparent that the lot was privately owned. Although the facts disclosed that the defendant whose automobiles were seized had no interest in the property on which the seizures took place, this circumstance was ignored by the Court and reference was made to *Hester v. United States*, 265 U.S. 57 (1924), in which the warrantless seizure there upheld took place in an open field owned by the defendant.

We consider that the investigative entry by the officer into the common area between the buildings in this case and his consequent view of the marijuana plants growing there did not deprive appellee of a reasonable expectation of privacy. It is immaterial for present purposes, as it was in *Air Pollution Variance Board v. Western Alfalfa Corp.*, *supra*, whether the entry may have gone beyond the invitation impliedly extended to the public to enter the common area and may have constituted a technical trespass. An entry on private property

for investigative purposes does not violate fourth amendment protections where the property is open to the general public.[1] In the present case the officer did not intrude on constitutionally protected property and needed no warrant in order to place himself beside the marijuana plants. Was this sufficient to permit their seizure?

With respect to the plants which were growing beside the staircase, and which were not shielded or protected as were the plants in the shed, we think the answer is clearly affirmative. The plants were contraband and subject to summary seizure, if found by the officer in a situation which placed them outside of fourth amendment protection. *G. M. Leasing Corp. v. United States, supra; Hester v. United States, supra.* With respect to these plants, in contrast to the heroin which was secreted in the wall and in the washing machine in *State v. Dias, supra,* their total lack of concealment or isolation from the view or grasp of persons in the common area negated any reasonable expectation of privacy on the part of appellee. "If a policeman sees probable evidence in open view in a constitutionally non-protected area, he may, of course, seize it . . . . He seizes it because there is no constitutional provision to gainsay the seizure." Moylan, The Plain View Doctrine: Unexpected Child of the Great "Search Incident" Geography Battle, 26 Mercer L. Rev. 1047, 1067 (1975).

The plants which were in the locked shed were in a different situation. The evidence is in dispute as to their visibility.

---

[1] In *Rakas v. Illinois,* 99 S.Ct. 421 (1978), the majority and dissenting opinions agree that *Air Pollution Variance Board v. Western Alfalfa Corp., supra,* stands for the proposition that "there comes a point when use of an area is shared with so many that one simply cannot expect seclusion." 99 S.Ct. at 432 (majority opinion of Justice Rehnquist), 99 S.Ct. at 421 (dissenting opinion of Justice White). The majority opinion identifies the critical question in a search and seizure case as whether the person claiming the constitutional protection "had a legitimate expectation of privacy in the particular areas . . . . searched." 99 S.Ct. at 433. The concurring opinion of Justice Powell confirms that a property interest provides a basis for a claim that fourth amendment rights have been invaded only to the extent that it is a relevant consideration in determining whether an individual's expectations of privacy are reasonable. 99 S.Ct. at 421. In the case before us, there is no showing of any property interest in the common area on the part of appellant which would support the reasonableness of an expectation of privacy with respect to the plants.

If they were in fact concealed from view as defendant testified and were found by the officer as the result of a warrantless search, the case is governed by *Dias* and the plants were properly suppressed as evidence. We think the same result follows, even though the plants may have been clearly visible to the officer within the shed as he testified.

The fact that the shed was locked placed the interior of the shed in a different status from the common area between the buildings. It was a place from which the public was excluded, a fact which might have been true even without the lock. Visibility of contraband within constitutionally protected premises is not enough to justify entry and seizure without a warrant. As was said in *Coolidge v. New Hampshire*, 403 U.S. 443, 468 (1971):

> Incontrovertible testimony of the senses that an incriminating object is on premises belonging to a criminal suspect may establish the fullest possible measure of probable cause. But even where the object is contraband, this Court has repeatedly stated and enforced the basic rule that the police may not enter and make a warrantless seizure.

It is probably not surprising that observation of marijuana plants or cuttings has furnished numerous occasions for application of this doctrine. Holding that a constitutionally permissible view of such contraband from outside private premises did not permit warrantless entry to seize the plants or cuttings, *see, e.g., State v. Spietz*, 531 P.2d 521 (Alaska 1975); *State v. Lane*, 573 P.2d 198 (Mont. 1978); *State v. O'Herron*, 153 N.J. Super. 570, 380 A.2d 728 (1977); *State v. Davis*, 228 N.W.2d 67 (Iowa 1975); *Pendleton v. Nelson*, 404 F.2d 1074 (9th Cir. 1968). Where contraband comes into the view of an officer during the course of a permissible entry into constitutionally protected premises, the "plain view" doctrine may permit its seizure. *State v. Davenport*, 55 Haw. 90, 516 P.2d 65 (1973). But the view itself, standing alone, is not enough to justify an otherwise improper entry, as is pointed out in *Coolidge v. New Hampshire, supra. Boim v. State*, 194 So. 2d 313 (Fla. App. 1967), and *State v. Pontier*, 518 P.2d 969 (Idaho 1974), upon which the State relies, fail to recognize that,

absent exigent circumstances, a view of contraband from outside the constitutionally protected area can support only the issuance of a search warrant and not a warrantless entry. *See also Brown v. State,* 15 Md. App. 584, 292 A.2d 762 (1972).

In *United States v. Chadwick,* 433 U.S. 1 (1977), the Court confirmed that fourth amendment protection from unreasonable searches and seizures extends beyond homes and offices. At the time of defendant's arrest, the government lawfully took into custody a footlocker which the agents had probable cause to believe contained marijuana. The footlocker was locked by both a key and a padlock, and was opened subsequent to the arrest. In holding that marijuana obtained from the footlocker was properly suppressed as evidence, the Court said:

> In this case, important Fourth Amendment privacy interests were at stake. By placing personal effects inside a double-locked footlocker, respondents manifested an expectation that the contents would remain free from public examination. No less than one who locks the doors of his home against intruders, one who safeguards his personal possessions in this manner is due the protection of the Fourth Amendment Warrant Clause. There being no exigency, it was unreasonable for the Government to conduct this search without the safeguards a judicial warrant provides.

No showing was made of any exigency which required the warrantless seizure of the plants in appellee's shed. Several officers were present and the time was midafternoon. Appellee was in custody. The officer testified that the only reason he did not obtain a search warrant was concern that someone might pull up and dispose of the plants. But there is no suggestion that it would have been impracticable to keep the shed under surveillance while a search warrant was obtained. It is true that the showing of probable cause for the issuance of the warrant was so strong as to be virtually conclusive. Nevertheless, there is no room in constitutional doctrine to dispense with a warrant as a needless formality. The determination whether the police may enter constitutionally protected premises for purposes of a search or seizure must be

made by a neutral and detached judicial officer. *Coolidge v. New Hampshire, supra* at 453.

On oral argument, the State contended that the seizure of the plants was valid as an incident to a lawful arrest. This contention was not made before the trial court or in the briefs. There is no indication that the validity of the arrest, as a basis for the seizure, was considered by the trial court. The issue is not properly before us on the State's appeal. Nevertheless, we note that in *Dias,* under similar facts, the arrest of the defendant for possession of narcotics was held not to justify a search of the area outside his reach although adjacent to the point of the arrest. *Cf. United States v. Chadwick, supra.*

The order suppressing evidence is affirmed with respect to the marijuana plants in the shed and reversed with respect to the marijuana plants growing beside the stairway. The case is remanded for further proceedings consistent with this opinion.

*Glenn M. Miyajima (Adrienne Sepaniak* on the brief) Deputy Prosecuting Attorneys, City and County of Honolulu, for plaintiff-appellant.

*Steven E. Kroll (Stephen D. Krohn* with him on the brief) for defendant-appellee.