STATE OF HAWAII, Plaintiff-Appellant, *v.* ROBERT TEXEIRA, Defendant-Appellee

NO. 6133

and

STATE OF HAWAII, Plaintiff-Appellant, *v.* RONALD R. RIVERA, RUDOLPHO SANCHEZ, GILBERT ARANG, JOSEPH KALEIKINI, JERRY A. MORSE, SAM ZANE, FRED M. KIYABU, HERMAN VICTOR, RANNY KIAHA, ROBERT A. HOLBRON and THOMAS M. KEY, Defendants-Appellees

NO. 6134

MARCH 31, 1980

RICHARDSON, C.J., OGATA AND MENOR, JJ.*

---

* This matter was submitted without oral argument prior to the retirement of Justice Kobayashi on December 29, 1978 and Justice Kidwell on February 28, 1979. HRS § 602-10 (1978 Supp.) provides: "After oral argument of a case, if a vacancy arises or if for any other reason a justice is unable to continue on the case, the case may be decided or disposed of upon the concurrence of any three members of the court without filling the vacancy or the place of such justice."

*Per Curiam.* By stipulation of the parties S. C. No. 6133 and S. C. No. 6134 have been consolidated for the purposes of appeal. The State appeals from the order granting the defendants' motion to suppress and from the judgments of acquittal entered in favor of the defendants by the district court.

Prior to trial the defendants moved to suppress the testimony of Officer Takahashi on the ground that it was based on information obtained in violation of the search and seizure requirements of the Fourth Amendment. By stipulation the hearing on the motion and trial on the merits were consolidated. At the conclusion of the consolidated motion hearing and trial, where only police testimony was adduced, the court announced that the defendants' motion to suppress would be granted, and that since the officer's proferred testimony was

crucial to the State's case, the defendant's motion for judg-
ment of acquittal would also be granted. After the prosecutor
was asked by the court if he had any objection, the following
colloquy transpired:

MR. WONG:   No, Your Honor, except I believe the
State cannot appeal if you have acquitted the defendants.

THE COURT:   I've granted his motion to suppress.

MR. WONG:   Correst me if I'm wrong, but you said
the defendants are acquitted.

THE COURT:   You don't have any evidence. I'm
dismissing the case against them. Once you take Officer
Takahashi's testimony out, you don't have any case.

MR. WONG:   I understand that. I'm saying that the
issue for appeal is not possible.

THE COURT:   Well, I don't believe so; but if you
believe so, I'm sure Mr. Rego won't object. That's all.

The defendants contend that the State's right to appeal
has been foreclosed by reason of the judgments of acquittal in
their favor. We disagree. The stipulation for the joint hearing
on the motion to suppress and the trial on the merits did not
constitute a waiver by the State of its statutory right to appeal
from the adverse ruling of the trial court on the motion to
suppress. It is clear from the record that the trial court first
directed its ruling to the defendants' motion to suppress, and
then having ruled in their favor erroneously assumed that
judgments of acquittal could thereafter be entered. The trial
court may not in this manner deprive the State of its statutory
right, under HRS § 641-13(7), to appeal from the order of
suppression.[1] Should this court uphold the order of suppres-
sion, the judgments of acquittal will, of course, be allowed to
stand. Otherwise, the matter will be remanded for a new trial.

The question of whether the motion to suppress should
have been granted presents a more serious problem. In

---

[1] Despite the action taken by the trial court, there seems to have been some
recognition on its part that the State did have the right to appeal from the order of
suppression. Upon motion by the defendants for the return of the property seized, the
trial court stated that any such order it issues "will go into effect after the time for
appeal has expired, which is within ten days from this Court's decision."

abbreviated form, which is all that is necessary for our purposes, the salient facts are as follows: Acting on information received from an unnamed informant that gambling was being conducted at a location on Paakea Road, Waianae, known as the "Tanaka Place," Officer Takahashi, accompanied by Officer Lim, drove to Paakea Road, arriving there at approximately 10:00 p.m. He turned into Apana Road and saw the brightly illuminated building on Tanaka's premises. The Tanaka place was the third lot running from the intersection of Paakea and Apana Roads. Each of these three lots was occupied by buildings, and each was separated from the other by a wire fence running along a common boundary. In order for Officer Takahashi to approach the Tanaka building unobserved, he first had to climb over a fence between the first and second lots, and then crawl 80 to 100 yards across an open area behind the buildings on the second lot until he reached the fence separating this lot from the Tanaka premises. To avoid detection he stayed crouched behind this fence which was 15 to 20 feet away from the Tanaka building, and from this position was able to see into the brightly lighted interior through a screened opening in the structure. Although he had to move a few feet each way along the fence to take in more of the activities, he had no difficulty hearing and observing conduct within the building which he associated with a dice game in progress. At the end of fifteen minutes, he retraced his steps and returned to his vehicle where Officer Lim was waiting for him. From there they radioed for reinforcements and when the latter arrived, the officers went over the same route, and over onto the Tanaka premises by climbing a tree located at the boundary line. They entered the building through an unlocked screen door, arrested the defendants, and confiscated a dice cup, dice, croupier stick, and varying amounts of currency found on a gambling table around which the defendants had been standing.

The defendants rely very heavily upon the fact that Officer Takahashi did not first obtain permission from the owners of the first and second lots before crossing over their respective premises to reach his vantage point. According to police testimony these owners were not at home at the time. The fact

that the police were technically trespassing upon property not owned by any of the defendants appears to have also weighed heavily upon the trial court:

> I'm making a ruling that there was reasonable expectation of privacy on the part of the defendants and further that I don't think society can condone governmental officers trespassing in order to gain vantage points upon which they may view alleged criminal activity and it is on that basis that the Court is granting the motion to suppress Officer Takahashi's testimony; and on the basis of the Court's action, the Court will render judgment of acquittal against [sic] all of the defendants, dismiss the cases against them.

This court has held, however, that a technical trespass, even where it is committed upon the defendant's property, is not necessarily determinative of the issue of whether or not the subsequent warrantless search was improper. *State v. Brighter*, 60 Haw. 318, 589 P.2d 527 (1979); *State v. Kaaheena*, 59 Haw. 23, 575 P.2d 462 (1978). The real question, on the facts of this case, is whether police observation of the objects, activities, and statements sought to be suppressed was an invasion of the defendant's reasonable expectation of privacy. *State v. Brighter, supra; State v. Boynton*, 58 Haw. 530, 574 P.2d 1330 (1978); *State v. Kaaheena, supra; State v. Kender*, 60 Haw. 301, 588 P.2d 447 (1978); *State v. Stachler*, 58 Haw. 412, 570 P.2d 1323 (1977). This expectation must be legitimate and means more than a subjective expectation that the activity in which the defendant is engaged will not be discovered. *Rakas v. Illinois*, 439 U.S. 128 (1978). In making this determination, the two-fold test to be applied here is (1) whether the defendants had exhibited an actual expectation of privacy and (2) whether the expectation was one which society would deem to be reasonable. *Katz v. United States*, 389 U.S. 347, 361 (1967) (Harlan, J., concurring); *State v. Kaaheena, supra; State v. Stachler, supra*.

Using this standard as a measure, this court has held that where a wooden fence effectively prevented peeking from the outside, *State v. Boynton, supra*, or where gambling activity within the building was shielded from the view of passersby

by drapes and venetian blinds, *State v. Kaaheena, supra,* or where California grass within a boundary fence was allowed to grow to a height sufficient to hide marijuana plants from normal observation, *State v. Kender, supra,*[2] the defendants have exhibited a reasonable expectation of privacy.

Here, however, Officer Takahashi was able to observe the activity within the premises without having to climb on the fence as in *Kender,* and without having to stand on a crate stacked on a bench as in *Kaaheena.* Anyone behind the wire fence on the property adjoining the Tanaka premises could have readily seen and heard what Officer Takahashi visually and aurally observed. The sounds that emanated late at night from the building easily carried over into the neighboring premises, and the screened opening in the brightly illuminated building plainly exposed interior activity to persons who might have happened to be present on the adjoining property. The defendants knew and were willing to run the risk of being seen and overheard by *anyone* present on the adjoining premises. If a person knowingly exposes his activities to public view and hearing, he has not exhibited an actual expectation of privacy as to those activities. In this connection, the following observations by Mr. Justice Harlan in *Katz v. United States, supra,* are particularly apropos:

> [A] man's home is, for most purposes, a place where he expects privacy, but objects, activities, or statements that he exposes to the "plain view" of outsiders are not "protected" because no intention to keep them to himself has been exhibited. On the other hand, conversations in the open would not be protected against being overheard, for the expectation of privacy under the circumstances would be unreasonable. 389 U.S. at 361.

---

[2] In *Kender, supra,* for example, this court held that a police officer's observation of marijuana plants growing in the defendant's backyard, obtained by climbing onto a fence located on a neighbor's property, violated the defendant's reasonable expectation of privacy where there was no showing that the plants were otherwise visible from outside of the defendant's premises.

In light of the foregoing, we find that the visual and aural observations made by Officer Takahashi were not violative of the defendants' constitutional rights and hence not subject to a motion to suppress. What an individual knowingly exposes to the view and hearing of outsiders is not a subject of Fourth Amendment protection. *Id*. The officer could thus testify to what he visually and aurally observed. *Id; Ponce v. Craven*, 409 F.2d 621 (9th Cir. 1969).

However, the police entry into the building, including the attendant search and seizure, involves an entirely different proposition. Absent exigent circumstances, the police may not enter a private residence or building to effect a search and seizure without a warrant.[3] *State v. Hook*, 60 Haw. 197, 587 P.2d 1224 (1978). This proscription obtains with equal force where the entry is made for the purpose of effecting an arrest. *State v. Lloyd*, 61 Haw. 505, 606 P.2d 913 (1980). Exigent circumstances exist when immediate police response is required to prevent imminent danger to life or serious damage to property, or to forestall the likely escape of a suspect or the threatened removal or destruction of evidence.[4] *Id*.

In the case before us, absolutely no showing was made by the State that it would have been impracticable for the officers to obtain a warrant, or that the delay inherent in the application for, and the issuance of, a search or arrest warrant would have resulted in the likely escape of the defendants or the likely removal or destruction of the evidence.

---

[3] In Coolidge v. New Hampshire, 403 U.S. 443, 468 (1971) the Supreme Court again emphasized:

[N]o amount of probable cause can justify a warrantless search or seizure absent "exigent circumstances." Incontrovertible testimony of the senses that an incriminating object is on premises belonging to a criminal suspect may establish the fullest possible measure of probable cause. But even where the object is contraband, this Court has repeatedly stated and enforced the basic rule that the police may not enter and make a warrantless seizure.

[4] The police, of course, may not deliberately manufacture their own exigent circumstances. United States v. Santana, 427 U.S. 38, 49 (1976) (Marshall, J., dissenting).

Officer Takahashi met with his informant at approximately 9:30 p.m. The latter advised him that a dice game was in progress at the Tanaka Place in Waianae, and based on past transactions with his informant, the officer had no doubt about the reliability of this latest information. He might have begun preparations for securing a warrant but he did not. Instead he proceeded immediately to Waianae with Officer Lim, and the game was still in progress when the officer reached his vantage point shortly after 10:00 p.m.[5] The police were careful to avoid detection throughout, and none of the defendants became aware of their presence until after the entry. At the time of the police intrusion, there was nothing about the situation and the conduct of the defendants which could have led the police reasonably to believe that flight was imminent or that evidence was likely to be removed or destroyed before a warrant could be obtained. *See Johnson v. United States*, 333 U.S. 10 (1947).

It was not necessary that Officer Takahashi himself applied for the warrant. He and Officer Lim were in radio communication with headquarters and with other officers. He could have relayed his observations to other officers more conveniently situated for the purpose of applying for the warrant. And while the events occurred in the evening, it is inconceivable that none of the judges in the first circuit would have been available for the purpose of entertaining an application for a warrant. *See United States v. Brewer*, 343 F.Supp. 468, 471 n. 1 (D. Haw. 1972). Inconvenience to the police or to a judge, for that matter, has never been a very convincing reason to by-pass the warrant requirement. *Johnson v. United States, supra.*

No exigent circumstances having been shown to exist at the time of the warrantless intrusion, we hold that police observations made, and evidence recovered, following their entry into the building were properly suppressed. *Coleman v.*

---

[5] Gambling has been known to go on for hours and throughout the night, and in this case there was nothing to indicate that the game was breaking up.

*Reilly*, 8 Wash. App. 684, 508 P.2d 1035 (1973); *Sabbath v. United States*, 391 U.S. 585 (1968). *Cf. State v. Lloyd*, *supra*.

We affirm in part and reverse in part, and remand for further proceedings consistent with this opinion.

*Winston K. Q. Wong* and *Archibald Kaolulo*, Deputy Prosecuting Attorneys on the briefs, for plaintiff-appellant.

*Anson O. Rego*, on the brief for defendants-appellees.

STATE OF HAWAII, Plaintiff-Appellant, *v.* HENRY DIAS, LEONARD MAU, COLIN LUM, JERRY KAICHI, WILLIAM ENGLISH, ROBERT THOMAS, ABRAHAM AHMAD, HIROO TERAMAE, GONRADO MADANAY, JAMES LAU, PHILLIP PALENCIA, Defendants-Appellees

NO. 6558

APRIL 10, 1980

RICHARDSON, C.J., OGATA, MENOR, JJ., AND RETIRED JUSTICES MARUMOTO AND KOBAYASHI ASSIGNED BY REASON OF VACANCIES

OPINION OF THE COURT BY MENOR, J.

This is an appeal by the State from the trial court's order granting the defendants' motion to suppress evidence of gambling activity.

---

breaking doors or other barriers. But before breaking any door, he shall first demand entrance in a loud voice, and state that he is the bearer of a warrant of arrest; or if it is in a case in which arrest is lawful without warrant, he shall substantially state that information in an audible voice.