STATE OF HAWAII, Plaintiff-Appellee, *v.* BERNARD DANIEL DORSON and CAROL ANN DORSON, Defendants-Appellants

NO. 6256

AUGUST 20, 1980

RICHARDSON, C.J., OGATA, MENOR, JJ.,
RETIRED JUSTICE MARUMOTO AND CIRCUIT JUDGE CHANG,
ASSIGNED BY REASON OF VACANCIES

378

OPINION OF THE COURT BY MENOR, J.

The defendants were convicted of the offense of promoting a detrimental drug in the first degree, under HRS § 712-1247(1)(e).[1] They appeal from the judgment and sentence of the trial court.

The determinative issue in this case is whether the trial court erred in denying the defendants' motion to suppress marijuana and marijuana paraphernalia seized within their residence.

The defendants, Mr. and Mrs. Dorson, were husband and wife who lived in Kona. By prearrangement and with money furnished by the Kona police, their informant purchased marijuana from Mr. Dorson at his residence. While waiting in the living room, the informer saw Mr. Dorson go to a back room and return with a plastic bag of marijuana. The informant paid for the drug with $500 in marked currency, and

---

[1] HRS § 712-1247(1)(e)

(1) A person commits the offense of promoting a detrimental drug in the first degree if he knowingly:

\* \* \* \* \*

(e) Possesses one or more preparations, compounds, mixtures, or substances, of an aggregate weight of two and two-tenths pounds or more, containing any marijuana; or

before he left he saw another plastic bag of marijuana in the living room. Later in the day, after he had left home to go to work, the police arrested Mr. Dorson for investigation. Following his arrest, Sgt. DeSa directed Sgt. Akamu to secure the Dorson residence while he himself made preparations to obtain a search warrant. There being no judge available in Kona, Sgt. DeSa contacted Sgt. Otani in Hilo, provided him with the information obtained from the informant, and requested that Sgt. Otani prepare and execute the required affidavits for presentation to a judge in Hilo.[2] It was then 4:52 p.m.

Police sergeants Akamu, Pacheco, and Perreira, had already gone to the Dorson residence, arriving there at approximately 4:00 p.m. The officers knocked on the door, and when it was opened by a young woman, they detected the odor of burning marijuana. Seeing who they were, the young lady turned back into the house and the officers followed. While in the dwelling they saw no evidence of burning marijuana. Regarding their conduct, the trial court found:

> That police officers Richard Akamu, Wesley Perreira and Roland Pacheco entered the Dorson residence without use of force and in a peaceable manner and that their intent in entering the Dorson residence was to secure and preserve the Dorson residence pending receipt of the search warrant from Hilo and to notify the occupants of their purpose and the fact that a search warrant for marijuana was being prepared at that time.

> That the officers did not search the Dorson residence nor did they seize any evidence or items from the residence at the time of their entry into it; further, that the actions of the officers was limited to checking the living areas of the residence for occupants so as to preserve and secure the residence and to inform the occupants of their intentions.

---

[2] All of the judges in Hawaii County resided and had their offices in the Hilo area at the time.

Police testimony was more explicit. Sgt. Akamu testified that it was their intent to secure the residence to prevent the destruction of evidence. The purpose of the initial entry, according to the officer, was "[t]o inform the occupants that they were to stay in a particular position and not move around the house to destroy evidence that we were seeking." The police were prepared to remain in the house, if necessary, to preserve the contents of the residence until such time as the search warrant arrived.

Sgt. Akamu testified:

Q. What would you three officers do to assure that they would not move around the house and destroy evidence?

A. We would remain there.

Q. Remain where, sir?

A. Within the home.

Q. So you intended to remain within the home —

A. To let them know we didn't want them to move around where we could not see them.

Q. So you intended to remain within the home pending the arrival of the search warrant?

A. Yes, sir.

The occupants, nevertheless, were later given one of three options: (1) Leave the house but allow themselves to be frisked before they left the premises, (2) remain in the house but stay in positions where their every movement could be monitored by police standing outside near the building, or (3) allow the police to station themselves in the house where they could keep the occupants under observation. After receiving assurances from Mrs. Dorson and her visitors that they would not move around within the home except where they could be seen by police standing on the outside, the officers moved out to positions where they could readily see into the building and observe the conduct of the occupants. Some of the visitors did eventually decide to leave, however, and in this connection, the trial court found:

That after the police left the residence they waited outside the residence for the search warrant; that the police never blocked or stopped ingress and egress to and from

the residence but did request persons entering and leaving the residence to allow themselves to be frisked for the limited purpose of securing and preserving the interior condition of the Dorson residence pending receipt of the search warrant.

The trial court further found that police conduct in this case constituted an impoundment of the premises, but concluded that this did not constitute a search or seizure of items within the dwelling and that "[t]he actions of the police in securing the Dorson residence was reasonable and legally permissible to insure that no evidence would be removed or destroyed from the residence while the district court was reviewing probable cause for issuance of the search warrant." We think that the trial court erred.

To impound is to seize and hold in custody, and we are unable to see how, as a practical matter, a container can be impounded without also impounding its contents. The actions of the police had the effect of sealing the premises and of curtailing the occupants' freedom of movement within the home. Nothing could be touched without the approval of the police, and no movement could be made except under their watchful eyes. Under these circumstances, we think that, realistically, there was a seizure of the house and its contents within the meaning of the Fourth Amendment. *People v. Shuey*, 120 Cal. Rptr. 83, 533 P.2d 211 (1975); *State v. Bean*, 89 Wash.2d 467, 572 P.2d 1102 (1978); *State v. Drouhard*, 31 Or. App. 1083, 572 P.2d 331 (1977); *cf. State v. Lloyd*, 61 Haw. 505, 606 P.2d 913 (1980).

In *People v. Shuey, supra,* the police had entered and occupied the defendant's home pending the arrival of a search warrant. The occupation in that case lasted approximately three hours. The California Supreme Court held that the securing of the premises was itself a seizure, and said:

Analytically this case can be regarded simply as involving a de facto, inchoate seizure of the person and property of [the defendant] the moment the police began the illegal occupation. Thereafter the obtaining of the warrant could no more operate "to disinfect this conduct" [citations omitted] than if the police had actually seized the indivi-

dual items sought to be suppressed prior to acquisition of the warrant.

120 Cal. Rptr. at 94, 533 P.2d at 222.

In *State v. Bean, supra,* the police had received information that the defendant was dealing in narcotics. After discovering drugs in his vehicle, they proceeded to obtain a search warrant for his residence. Prior to the arrival of the warrant, he was arrested and his home was immediately entered and secured by the police. The Washington Supreme Court held that the occupation of the defendant's home was unlawful and that any evidence discovered and seized prior to and after the arrival of the warrant was properly suppressed. It agreed with the *Shuey* court that a seizure had occurred the moment the police began their warrantless occupation.

In *State v. Drouhard, supra,* where the police had entered the defendant's residence to secure it while a search warrant was being obtained, the Oregon court held that the act characterized by the police as "securing" was a search and seizure within the meaning of the Fourth Amendment.

And in *State v. Lloyd, supra,* this court held that where the police, without a warrant, entered and remained in the defendant's house to guard the occupants and kept a box of contraband under observation in another room until a search warrant could be obtained, there was in effect a seizure of the contraband. This court found, however, that the initial warrantless entry was justified by exigent circumstances.

The fact that in this case no comprehensive search was made, and no evidence physically seized, until the search warrant arrived did not validate the warrantless securing or impoundment of the house and its contents. *People v. Shuey, supra; State v. Bean, supra; United States v. Griffin,* 502 F.2d 959 (6th Cir. 1974), *cert. denied* 419 U.S. 1050; *cf. State v. Lloyd, supra; State v. Drouhard, supra.*

The State itself recognizes that there is no constitutional provision, statute, or rule authorizing impoundment. It nevertheless suggests that this court should authorize its limited use as a law enforcement tool under established guidelines. We decline to follow the suggestion. To adopt the State's proposal would be to sanction a potentially dangerous

police practice and to carve out still another exception to the warrant requirement. This we may not do. The United States Supreme Court, *see, e.g., Coolidge v. New Hampshire*, 403 U.S. 443 (1971); *Vale v. Louisiana*, 399 U.S. 30 (1970), and this court, *see, e.g., State v. Texeira*, 62 Haw. 44, 609 P.2d 131 (1980); *State v. Hook*, 60 Haw. 197, 587 P.2d 1224 (1978), have held time and again that absent exigent circumstances, the police may not enter a private residence to search and to seize without first obtaining judicial approval or the consent of the occupants.[3] And even where the warrantless securing of premises has been sanctioned, a required condition precedent to the entry has been the existence of exigent circumstances. *United States v. McLaughlin*, 525 F.2d 517 (9th Cir. 1975); *United States v. Griffin, supra.* In *Griffin,* narcotics agents had gone to secure the defendant's apartment while other officers went for a search warrant. In affirming the trial court's invalidation of the subsequent search and seizure, the federal appellate court held that "absent any of the narrowly limited exceptions to the search warrant requirement, police who believe they have probable cause to search cannot enter a home without a warrant merely because they plan subsequently to get one." 502 F.2d at 961.

What the State proposes would necessarily contemplate that any time the *police believe* they have probable cause to search, however weak the foundation for their belief may turn out to be, they may with impunity intrude upon the privacy of a person's home, so long as they are then in the process of applying for a search warrant. And it would make no difference that a judge might later deny their application. To justify such a procedure, it would have to be presumed that where the police believe they have probable cause, the judge reviewing their application will also find probable

---

[3] We are not dealing here with impoundment in the context of automobile searches. This court has recognized that an automobile, because of its mobility, may be treated less stringently than a private residence for Fourth Amendment purposes.

State v. Elliott, 61 Haw. 492, 605 P.2d 930 (1980). Another reason for the application of less rigorous warrant requirements to automobile searches is that the expectation of privacy with respect to one's automobile is significantly less than that relating to one's home or office. South Dakota v. Opperman, 428 U.S. 364 (1976).

cause. This, obviously, would not necessarily be the case. The potential for mischief and grave injustice is clearly evident and such a practice is not sanctioned by the Fourth Amendment. The siege and immobilization of the Dorson house and its occupants which lasted for a period of some seven hours before the search warrant arrived was patently inexcusable.

We do not doubt the good faith of the police in this case. In fact, we find as the trial court did that they were courteous and not overbearing in their conduct, and that they honestly believed they were operating within the framework of the law. But what they failed to fully appreciate is the basic rule that absent exigent circumstances, the right to search or to seize is to be determined by a judicial officer, and not by a policeman or government agent. *Johnson v. United States*, 333 U.S. 10 (1947).

> The point of the Fourth Amendment, which often is not grasped by zealous .officers, is not that it denied law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime. *Any assumption that evidence sufficient to support a magistrate's disinterested determination to issue a search warrant will justify the officers in making a search without a warrant would reduce the Amendment to a nullity and leave the people's homes secure only in the discretion of police officers.*

*Id.* at 13-14. (Emphasis added)

An exigency, for the purposes of a warrantless search or seizure, exists when immediate police action is required to prevent imminent danger to life or serious damage to property, or to forestall the likely escape of a suspect or the threatened removal or destruction of evidence. *State v. Texeira, supra; State v. Lloyd, supra.* To justify a warrantless search or seizure, the government must be able to show that it was impracticable for the police to obtain a warrant, or that the delay attendant upon the application for, and the issuance

of, the warrant would have likely resulted in the removal or destruction of evidence. *Id*. More specifically, on the facts of this case, the question is whether there was a real likelihood or a substantial risk that the contraband allegedly on the defendants' premises might be removed or destroyed before a warrant could be obtained. Such an exigency must be shown by the State to have existed *at the time of the entry and impoundment*, if the conduct of the police in this case is to be sustained. *State v. Elliott, supra; United States v. McLaughlin, supra.*

The mere fact that drugs were involved was not an exigent circumstance. That contraband is easily removed, hidden, or destroyed is not, in and of itself, an exigent circumstance. *Vale v. Louisiana, supra*. Neither is the fact that when the door was opened in response to the knocking at the door and the announcement of police presence, the officers detected the odor of burning marijuana. Their sole and avowed purpose in going to the Dorson residence was to secure the premises, and in that respect their presence at the door was unjustified. *United States v. Curran*, 498 F.2d 30 (9th Cir. 1974). More significantly, while the smell of marijuana may establish probable cause, it is not an exigent circumstance that will justify a warrantless entry. *Id; State v. Shur*, 217 Kan. 741, 538 P.2d 689 (1975). Odors alone do not authorize a search or seizure in a home without a warrant. *Johnson v. United States, supra*. "Incontrovertible testimony of the senses that an incriminating object is on premises belonging to a criminal suspect may establish the fullest measure of probable cause. But even where the object is contraband, this Court has repeatedly stated and enforced the basic rule that the police may not enter and make a warrantless seizure." *Coolidge v. New Hampshire*, 403 U.S. 443, 468 (1971); *State v. Hook, supra*.

The fact that the nearest judicial officer was 100 miles away in Hilo was not in itself an exigent circumstance. The Kona police were in telephonic communication with the Hilo police, and it was not necessary for a Kona police officer himself to make the application. Information which is properly the basis for a search warrant may be communicated to

another officer for the latter's use in obtaining a search warrant. *State v. Texeira, supra; see also State v. Yaw,* 58 Haw. 485, 572 P.2d 856 (1977) (reliable hearsay upon hearsay may support the issuance of a search warrant). Such a procedure was followed in this case.[4] And while we recognize that it would have taken two and one-half hours for the Hilo police to relay the search warrant to the Kona police, the question must still necessarily be, whether the delay attendant upon the issuance and service of the search warrant would have likely resulted in the removal or destruction of the contraband.[5] *State v. Texeira, supra.* So far as the record shows, however, the police were proceeding simply on the assumption that it might have. But the mere subjective belief of the police that evidence is in imminent danger of removal or destruction is never enough as a basis for a finding of exigent circumstances. *United States v. Brewer, supra.* More than that is required. *Id.*

The fact that a confederate has been arrested may or may not be an exigent circumstance. *See, e.g., United States v. Gardner,* 553 F.2d 946 (5th Cir. 1977), *United States v. McLaughlin, supra.* In *Gardner,* the defendant and his wife were suspected of involvement in the drug traffic. An informer cooperating with the government arranged to purchase drugs from the defendant. The sale was consummated in the defendant's home. A surveillance of the residence had earlier been established, and as the informer emerged from the home with the defendant, he gave a prearranged signal to the waiting officers. Federal agents, in at least five cars, promptly moved in with their guns drawn and arrested both the defendant and the informant. When the latter told the officers that a woman was in the house, the agents im-

---

[4] H.R.P.P. Rule 41 now authorizes the police to apply for a search warrant via the telephone. A search may also be authorized by a judge in the same manner. This procedure was not in effect at the time of the impoundment in this case.

[5] The fact that the hour was late (after working hours) and that it would have entailed a travelling time of two hours for the federal agents in that case to obtain and return with a search warrant was not considered by the court in United States v. Brewer, 343 F.Supp. 468 (D.Haw. 1972), to be determinative.

mediately entered and found the defendant's wife. The federal appellate court found that the warrantless entry was justified by exigent circumstances. The court said:

> When [the informant] told the agents someone was in the house, an immediate entry became necessary to prevent disposal of the cocaine, a powder which can easily be flushed down a toilet. The agents could logically have suspected that anyone inside the house would be well aware of the five police cars ringing the premises and the arrest of defendant and Gunn. The danger that someone would dispose of the illicit drugs was especially great in this case because the agents knew the person in the house might be Susan Gardner, the defendant's wife and partner in the drug trade. Accordingly, the agents justifiably acted "now or never" to preserve the evidence of the crime.

553 F.2d at 948.

In *United States v. McLaughlin, supra*, federal agents were acting on a tip from a reliable informant that a quantity of marijuana would be removed from McLaughlin's house at a certain time. The agents promptly initiated a surveillance of the defendant's premises. Subsequently, they saw a vehicle driven by one Coyne stop at the house. Coyne went in and emerged with a package which he placed in the trunk of the car. Before he could close it, the officers approached and saw two kilos of marijuana in the open paper bag. They immediately arrested Coyne and after knocking at the door, demanding entrance and hearing shuffling sounds from within, they entered the dwelling. They occupied the premises until a search warrant arrived. The federal appellate court found that for the police to have delayed the entry until a warrant was obtained would have involved a substantial risk that evidence would be removed or destroyed. It said:

> Coyne's arrest made it likely that those in the McLaughlin residence would discover that they were under surveillance. This would lead them to destroy or remove evidence, if possible. Simultaneously, they would canvass the possibilities of escape.

525 F.2d at 521.

In each of these cases, the likelihood was real, and the risk substantial, that contraband might be removed or destroyed. Police presence was plainly evident and the arrests were made within the sight and hearing of persons inside the building. Individuals who might have had an interest in disposing of the contraband were thus alerted, and the psychological pressures generated by the arrest of a confederate and the forbidding presence of the police made it almost certain that immediate destruction or removal of incriminating evidence would be very much on their minds. No such circumstances, however, were present in this case.

Mr. Dorson was arrested away from his home, so the fact of his arrest was not in itself an exigent circumstance. *See Vale v. Louisiana, supra.* As far as Mrs. Dorson was concerned, her husband was still at his place of employment. Mr. Dorson apparently had made no effort to communicate with her following his arrest. It was not until the police arrived to secure her premises that she was first made aware of her husband's detention. The police had Mr. Dorson in their custody at the police station, and they were in a position to monitor whatever calls an arrested person is entitled to make. This was thus not a case where confederates in the home had been alerted to the probability that a search for contraband by law enforcement agents was imminent. The police, therefore, had no reason for believing, at the time of the entry and impoundment, that the contraband which they sought was then threatened with removal or destruction. The police must be able to point to specific and articulable facts from which it may be determined that the action they took was necessitated by the exigencies of the situation. *State v. Dias,* 62 Haw. 52, 609 P.2d 637 (1980). They have been unable to do so, and the record discloses none.

Reversed and remanded for further proceedings consistent with this opinion.

*Steven K. Christensen* for Carol Ann Dorson defendant-appellant.

*Wallace H. Gallup, Jr.* for Bernard Daniel Dorson defendant-appellant.

*Douglas Halsted* Deputy Prosecuting Attorney for plaintiff-appellee.