STATE OF HAWAII, Plaintiff-Appellee, *v.* DONNA ANN BAR-
NETT, Defendant-Appellant

(CRIMINAL NO. 6884)

and

STATE OF HAWAII, Plaintiff-Appellee, *v.* STEVEN GOLD, Defen-
dant-Appellant

(CRIMINAL NO. 6885)

NO. 9934

JULY 17, 1985

LUM, C.J., NAKAMURA, PADGETT,
HAYASHI AND WAKATSUKI, JJ.

OPINION OF THE COURT BY LUM, C.J.

This case is an appeal by Defendants Donna Ann Barnett and Steven Gold from denials of their motion to suppress marijuana seized by members of the Maui Police Department on October 13, 1981 and from convictions for Promoting a Detrimental Drug in the First Degree. Because the trial court erred in concluding that Barnett consented to the search of Defendants' Maui property and that such a search was justified by exigent circumstances, we reverse its ruling and the resulting convictions.

I.

The search of Defendants' 16.9 acre tract in Maui's Lower Nahiku area occurred approximately one month after Maui police had, through helicopter surveillance, observed marijuana on an adjacent parcel of land which they believed to be State-owned. They made no efforts to confirm ownership of the land, however. On the day of the search, three officers drove up the driveway belonging to Defendants. They passed two posted "No Trespassing" signs. It was uncontested at the suppression hearing that marijuana was not visible from the public highway bordering the parcel, and that marijuana on Defendants' land had not been seen from the air. The officers had no search warrant.

The police approached Barnett, who was on the porch of a house watering plants in the nude. She spoke with the officers after going inside to dress, and the police asked her if they could walk across her property to go look for the marijuana plants which had previously been seen from the air. Barnett refused this request. According to Officer Ribao's testimony, Barnett then directed them to a foot trail and told them to follow it. Barnett testified that she directed them back to the trail they had come up on and told them they could try to walk up the river which formed the eastern boundary of the parcel. The trial court found that she told them to try following the boundary, walked them down the path they had come up and pointed them to the boundary.

The officers began to cut across Defendants' property. They proceeded mauka until reaching a fence, and then went in a mauka/Hana direction until reaching the top of a ridge. The "trail" leading up to the

ridge was thick brush, which at points was impassable. From their vantage point on a ridge on Defendants' land, looking down to Defendants' homes, the officers saw five marijuana plants growing among a grove of guava trees. Looking along a trail leading to this area, the officers saw other plants in the low grass area. Walking down to these plants, the officers followed a black water hose which led them to a third patch of plants. The groups of plants were, respectively, 400 feet, 250 feet and 150 feet from Barnett's home.

The officers then went to Barnett's house, but found no one there. Noticing a smaller house approximately eight feet from the main dwelling, they approached it. Through a clear plastic wall, they saw marijuana hanging inside. The officers entered and seized 14-1/2 pounds of marijuana.

## II.

We dispose first of the State's contentions that the trial court properly concluded that when Barnett "directed and accompanied police to a path upon which they were to travel, she in fact consented to the police officers' presence on that portion of the property." It is true that a plain view rationale would support a warrantless seizure where police who are lawfully on constitutionally protected premises inadvertently come across evidence of a crime. *State v. Kaaheena,* 59 Haw. 23, 28, 575 P.2d 462, 466 (1978); *Coolidge v. New Hampshire,* 403 U.S. 443 (1971).

However, as the Defendants argue, the record does not support the conclusion that Barnett consented to the officers' presence on the path which they eventually followed up to the ridge. The burden is on the State to show consent which is free and voluntary. The test is one of the totality of the circumstances and the State's showing must be by a preponderance of the evidence. *State v. Patterson,* 58 Haw. 462, 571 P.2d 745 (1977). The evidence as to Barnett's consent here is contradictory, and the State's evidence, even if accepted wholeheartedly, does not clearly establish consent.

As noted, Barnett testified that she directed the police back to the trail they had come up on, and told them they could try to walk up the river which formed the property's eastern boundary. The path which the officers followed however, was away from the direction in which they had come. The trial judge also found Barnett told the men to try to follow the boundary, walked them down to the path they had

 

approached her on and pointed them to the boundary, which was in the Paia direction from there. This finding clearly does not contain evidence supporting a conclusion that she acquiesced in their moving in a mauka direction from that point, or then eventually in a completely opposite direction toward Hana.

Even Officer Ribao's testimony, if believed entirely by the trial judge, does not clearly establish consent. While he testified on direct that Barnett directed them to a foot trail and told them to follow it, on redirect, his recollection was much more unclear.

Q. Okay, so you know that she said "No, you can't cross."
A. Yes.
Q. Then she said — she directed you in the other direction.
A. Yes.
Q. Okay, but you don't recall specifically whether she said, "Go down and follow a stream," or, "There's a path," or anything. You're not positive one way or another what she said.
A. No. She said to follow an overgrown path, and she pointed into this direction.
Q. You're certain these were her words?
A. Maybe not exactly, but something to that effect. She didn't mention anthing about a stream or anything like that.
Q. You're certain or you don't recall?
A. I don't recall.
Q. So it's possible she did.
A. Well, yes.

(Tr. 5/18/83 at 62.) Such testimony does not establish consent by a preponderance of the evidence, and the trial court's conclusion of law was erroneous.

The visual search of Defendant's property and the seizure of the marijuana plants are not, therefore, permissible under a plain view rationale. This exception to the warrant requirement, as noted above, requires that the police officers have already justifiably intruded into an area in which there is a reasonable expectation of privacy. *State v. Kaaheena, supra.* "[I]f the original intrusion is justified, such as by consent, hot pursuit, warrant or as incident to an arrest, objects sighted in plain view will be admissible so long as the view was inadvertent." (Citations omitted.) *State v. Stachler,* 58 Haw. 412, 417, 570 P.2d 1323, 1327 (1977). In the instant case, the absence of an effective consent renders the officers' intrusion unjustified, and their subsequent actions

36

unreasonable within the meaning of the Fourth Amendment and Article I, Section 7 of the Constitution of the State of Hawaii.

### III.

Similarly, we find no support in the record for the trial court's conclusion that the warrantless seizure of the plants was reasonable based on exigent circumstances. The trial court determined that evidence could have been removed or destroyed without immediate action by the police. Upon a review of the record, we are convinced that this conclusion cannot stand, since nowhere do the findings contain "specific and articulable facts from which it may be determined that the action [the police] took was necessitated by the exigencies of the situation." *State v. Dorson,* 62 Haw. 377, 388, 615 P.2d 740, 748 (1980), *State v. Dias,* 62 Haw. 52, 609 P.2d 637 (1980).

It is true, as the State points out, that the police knew that Barnett was aware of their presence nearby, and had told Barnett what they were looking for. They were also aware that she was merely a co-owner of the property, and that she had left by the time the officers returned from the ridge. However, these facts do not establish that action without a warrant was necessary, as *Dorson* requires. At most, these facts may have led the police to assume that evidence would not be secure while a warrant was obtained. However, more than this is required. This court has said squarely that "the mere subjective belief of the police that evidence is in imminent danger of removal or destruction is never enough as a basis for a finding of exigent circumstances." *Dorson,* 62 Haw. at 386, 615 P.2d at 747.

Because the findings contain no specific and articulable facts which show that proceeding without a warrant was necessary, the trial judge's conclusion was therefore in error.

### IV.

Finally, we are compelled to reject the trial court's conclusion that the Defendants did not enjoy a legitimate expectation of privacy in the area searched. In determining the legitimacy of the Defendants' expectation of privacy, the relevant inquiry is (1) whether they exhibited an actual expectation of privacy and (2) whether the expectation was one which society would deem reasonable. *State v. Texeira,* 62 Haw. 44, 48,

609 P.2d 131, 134-35 (1980).

The first prong of this test is satisfied by several facts which appear in the record. Defendant Barnett was outside her home in the nude when the officers approached. A fence bounded the parcel along its makai side, the only direction from which public access was possible. "No Trespassing" signs were posted. These facts compel the conclusion that the Defendants actually expected that their activities on this parcel of land would remain private.

The reasonableness of such an expectation is borne out by the fact that none of the plants seized were visible from the road or other means of public access. They had not been observed during the prior aerial surveillance of adjacent parcels. The trial judge specifically found that the plants were visible only from a vantage point atop the ridge which the officers ascended.

In assessing the reasonableness of an expectation of privacy, *State v. Kender,* 60 Haw. 301, 588 P.2d 447 (1978), requires that we look to the nature of the area involved, the precautions taken to insure privacy, and the position of the government officer. The facts noted above establish that this area was isolated, the plants situated where they were not visible from the air or public thoroughfares, and the officers located at a vantage point on land which they had been explicitly instructed to leave. We cannot but conclude on this state of the record that an expectation of privacy was reasonable. The State's attempted reliance on *State v. Stachler,* 58 Haw. 412, 570 P.2d 1323 (1977), and *State v. Knight,* 63 Haw. 90, 621 P.2d 370 (1980), is unavailing, those cases considering the reasonableness of an expectation of privacy vis-a-vis aerial surveillance of an open marijuana patch. In contrast, the police activity here must stand or fall on the basis of observations made solely on the ground.

Similarly, we find the United States Supreme Court's decision in *Oliver v. United States,* ___ U.S. ___, 104 S. Ct. 1735 (1984), to be inapposite to the instant appeal. In one of the two cases considered in the *Oliver* opinion, narcotics agents conducted a warrantless search of a field of marijuana located more than a mile from the petitioner's home. No encounter with an owner of the property occurred; rather, the officers passed "No Trespassing" signs, and the driver of a camper van which they passed shouted out that no hunting was allowed. In the instant case, the clumps of marijuana plants were found at locations as close as 400, 250 and 150 feet from the dwelling located on the property. Ms. Barnett, who the officers knew was the owner of the land, specifi-

cally told the officers to leave the property. These facts make any analogy to the *Oliver* case inapt.

According to our interpretation of the mandate of Article I, Section 7 of the Constitution of the State of Hawaii, the warrantless search and seizure which occurred in this case was unreasonable. We therefore order that the convictions be reversed.

Reversed.

*Steven Booth Songstad* for Defendants-Appellants.

*Artemio C. Baxa,* Deputy Prosecuting Attorney, for Plaintiff-Appellee.