STATE OF HAWAII, Plaintiff-Appellee, *v.* CLAUDE SAMUEL LLOYD, Defendant-Appellant

NO. 5956

FEBRUARY 11, 1980

RICHARDSON, C.J., OGATA AND MENOR, JJ.,
AND RETIRED JUSTICE KOBAYASHI
ASSIGNED BY REASON OF VACANCY*

---

*Justice Kidwell, who heard oral argument in this case, retired from the court on February 28, 1979. HRS § 602-11 (1978 Supp.) provides: "After oral argument of a case, if a vacancy arises or if for any other reason a justice is unable to continue on the case, the case may be decided or disposed of upon the concurrence of any three members of the court without filling the vacancy or the place of such justice."

506

*Per Curiam*. The defendant was convicted on one count of promoting a detrimental drug in the second degree, under HRS § 712-1248, and one count of promoting a detrimental drug in the third degree, under HRS § 712-1249. He appeals from the judgment and sentence of the trial court. At issue is whether the marijuana seized by the police was properly admitted into evidence.

The Hawaii County police were advised by a telephone call from the San Diego, California, police department that a shipment of marijuana was due to arrive the following day on United Airlines Flight 101, in a box addressed to "Claude Lloyd, General Delivery, Hilo, Hawaii." Acting on this information, the Hawaii police contacted United Airlines freight agent Thomas Iwasaki, apprised him of the information they had received, and arranged to meet with him the next day.

Sgt. Richard Carter, together with Sgt. John DeSa and deputy prosecutor Jon Ono, met with Mr. Iwasaki at the Hilo airport on the appointed day. By then Flight 101 had already arrived. A large Italian Swiss Colony box, addressed to "Claude Lloyd" and bearing no return address, was pointed out to them by the agent. After photographing the box, the police instituted a surveillance of the area and waited until, by a pre-arranged signal, they were advised by Mr. Iwasaki that the box had been picked up by someone representing himself to be the addressee. Shortly thereafter, they saw the defendant emerge from the freight area carrying the Swiss Colony

box. They took his photograph as he was carrying it towards a parked white Dodge sedan where another man was waiting.

The defendant drove off, and the police followed for several miles until he reached his residence at 128 Hale Nani Street. The police took every precaution to avoid detection, and the record indicates that neither the defendant nor any of the persons in the dwelling was aware of the police presence at the time. The defendant and his companion were then seen entering the building with the box.

Reinforcements meanwhile had arrived, and pursuant to Sgt. Carter's instructions Officers Robello and Correa repaired to the rear of the premises to stand guard. At the same time, Sgt. Carter and Sgt. DeSa, who were in plain clothes, approached the front entrance with guns drawn. Several minutes had elapsed since the defendant's entry into his residence. Sgt. Carter testified at the suppression hearing that he knocked on the door and shouted "Police!" There immediately followed a "scurrying about" within the house and then a "crashing" sound toward the rear of the building. Upon hearing these sounds, Sgt. Carter immediately pushed open the unlocked front door and, followed by Sgt. DeSa, entered the premises.[1] They found the defendant in the bathroom, placed him under arrest, and continued on toward the back of the house from where the crashing sound had emanated. As they passed the open bedroom, they saw on the floor the box which the defendant had picked up at the airport. This container was now open, and lying alongside it was another smaller box, some wrappings, an exposed brick of marijuana, and two wrapped bricks.

Officers Robello and Correa testified that shortly after they heard Sgt. Carter knock and identify himself as a police officer, they saw a male figure jump through a rear window of the house. They apprehended him as he emerged and returned with him into the building. He was later identified as

---

[1] The trial court found as a fact that "the police did knock and announce their office, but did not state their purpose, nor demand entry before entering due to the 'scurrying' and 'crashing' sounds that they heard creating what they believed to be exigent circumstances."

one Jack Maertens and was the individual who had accompanied the defendant to the airport. Two women were also present in the home. None of the occupants were found to be armed.

The two women were taken to the police station, while the defendant and Maertens were placed under guard, and the box and its contents were kept under observation at the house until a search warrant was obtained and served approximately two hours later. It was then that the police took actual physical custody of the evidence lying on the bedroom floor. The police also recovered a small amount of seeds alleged to be marijuana from the top shelf of the closet in the defendant's bedroom. Prior to trial, the defendant moved to suppress the evidence seized by the police. The motion was denied.

## I.

Although the police did not take actual physical possession of the box and its contents prior to the arrival of the search warrant, the conduct of the police following the warrantless entry constituted a seizure within the meaning of the Fourth Amendment. *Shuey v. Superior Court,* 106 Cal.Rptr. 452 (1973). Until the search warrant was obtained, no one was allowed to touch the box or its contents. This, in practical and legal contemplation, was a seizure of evidence prior to the issuance of a search warrant. *Id.*

The essential issue created by these facts is whether the police were rightfully on the premises when they observed and seized the contraband. And because it was the avowed intent of the police to arrest the defendant, the more specific question is whether they had the right to enter his residence without a warrant for the purpose of accomplishing this objective.[2]

---

[2] An improper entry would have vitiated the arrest of the defendant which in turn would have required the suppression of the evidence seized. Sabbath v. United States, 391 U.S. 585 (1968).

It has long been settled that "a police officer may arrest without a warrant one believed by the officer upon reasonable cause to have been guilty of a felony." *Carroll v. United States*, 267 U.S. 132, 156 (1925). Probable cause to arrest without a warrant exists when the arresting officer has reasonable grounds to believe, from facts and circumstances personally known to him, or of which he has trustworthy information, that the person arrested has committed or is committing an offense. *State v. Barnes*, 58 Haw. 333, 568 P.2d 1207 (1977).

The applicability of this rule to warrantless arrests in public places has recently been reaffirmed by the Supreme Court. *United States v. Watson*, 423 U.S. 411 (1976) (arrest made in a public restaurant). The Court has even gone so far as to hold that the warrantless arrest of a suspect standing in plain view in the doorway of her home and retreating into the vestibule of her house where she was followed and arrested by law enforcement officers was not constitutionally proscribed. *United States v. Santana*, 427 U.S. 38 (1976). But the Court has yet to address itself squarely to the question of whether a consentless entry into a suspect's private home for the specific purpose of making a warrantless arrest is proscribed by the Fourth Amendment. *See United States v. Santana, supra* at 45 (Marshall, J., dissenting); *United States v. Watson, supra* at 418, n.6 (1976); *Gerstein v. Pugh*, 420 U.S. 103, 113 n.13 (1975); *Coolidge v. New Hampshire*, 403 U.S. 443, 480-481 (1971); *Jones v. United States*, 357 U.S. 493, 499-500 (1958). On the other hand, it is settled law that absent clearly exigent circumstances, the police may not enter a constitutionally protected area without a search warrant for the purpose of effecting a seizure even where probable cause exists.[3] *Coolidge v. New Hampshire*, 403 U.S. 443 (1971); *State v. Hook*, 60 Haw. 197, 587 P.2d 1224 (1978).

---

[3] In Coolidge, the Supreme Court said: Incontrovertible testimony of the senses that an incriminating object is on premises belonging to a criminal suspect may establish the fullest possible measure of probable cause. But even where the object is contraband, this Court has repeatedly stated and enforced the basic rule that the police may not enter and make a warrantless seizure. Coolidge v. New Hampshire, supra, at 468.

We do not think that the distinction between a warrantless entry of private premises for the purpose of making an arrest and a warrantless entry for the purpose of effecting a search and seizure is so significant as to justify fundamentally divergent treatment. *Dorman v. United States*, 435 F.2d 385 (D.C. Cir. 1970); *United States v. Calhoun*, 542 F.2d 1094 (9th Cir. 1976); *United States v. Reed*, 572 F.2d 412 (2d. Cir. 1978); *United States v. Campbell*, 581 F.2d 22 (2d. Cir. 1978); *United States v. Shye*, 492 F.2d 886 (6th Cir. 1974); *Vance v. North Carolina*, 432 F.2d 984 (4th Cir. 1970); *Commonwealth v. Forde*, 367 Mass. 798, 329 N.E.2d 717 (1975); *People v. Ramey*, 127 Cal.Rptr. 629, 545 P.2d 1333 (1976); *Laasch v. State*, 84 Wis.2d 587, 267 N.W.2d 278 (1978); *Comm. v. Williams*, 396 A.2d 1177 (Pa. 1978). *Contra: People v. Payton*, 45 N.Y.2d 300, 380 N.E.2d 224 (1978).

The Fourth Amendment of the Federal Constitution and Article I, § 7, of the Hawaii Constitution are addressed to searches and seizures of persons and property in indistinguishable terms,[4] and to hold that the police may not enter a suspect's residence without a warrant to search his premises but may enter without a warrant to effect his arrest would be perpetuating an anomaly for which there is no valid justification. Accordingly, we hold that under both Federal and Hawaii Constitutions, law enforcement officers may not enter the home of a suspect to effect his arrest, without his consent

---

[4] The Fourth Amendment to the Federal Constitution provides:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Article I, § 7, of the Hawaii Constitution provides:

The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches, seizures, and *invasions of privacy* shall not be violated; and no warrants shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized or the communications sought to be intercepted. (Emphasis added)

or without prior judicial authorization, in the absence of exigent circumstances. In *Laasch v. State, supra,* the court said:

> An arrest, the taking hold of one's person, is quintessentially a seizure [under the Fourth Amendment], and the invasion and disruption of a man's life and privacy which stem from his arrest are ordinarily far greater than the intrusions attending a search of his premises. In the absence of exigent circumstances, therefore, we believe that the entry of one's dwelling to effect an arrest is subject to a warrant requirement no less exacting than that applicable where the entry is made to effect a search for one's papers and effects. 267 N.W.2d at 283.

In a similar vein, the court in *People v. Ramey, supra,* deemed it to be completely illogical "to pay homage to the considerable body of law that has developed to protect an individual's belongings from unreasonable search and seizure in his home, and at the same time assert that identical considerations do not operate to safeguard the individual himself in the same setting." 545 P.2d at 1340. And Mr. Justice Stewart, in *Coolidge v. New Hampshire, supra,* has also observed:

> It is clear, then, that the notion that the warrantless entry of a man's house in order to arrest him on probable cause is *per se* legitimate is in fundamental conflict with the basic principle of Fourth Amendment law that searches and seizures inside a man's house without warrant are *per se* unreasonable in the absence of some one of a number of well defined "exigent circumstances." 403 U.S. at 477-78.

"[T]he power to arrest is an awesome one and is subject to abuse. An arrest [without a warrant] may permit a search of premises incident to the arrest, a search that could be carried out only upon probable cause and pursuant to a search warrant." *United States v. Santana, supra,* at 48 (Marshall, J. dissenting); *United States v. Rosselli,* 506 F.2d 627 (7th Cir. 1974). It may also supply the basis for the application of the plain view doctrine, for assuming police presence to be justified, evidence in plain view may be seized without a warrant. *Coolidge v. New Hampshire, supra.*

The police entry in this case may, therefore, be upheld only where exigent circumstances were present to justify the warrantless entry. *Sabbath v. United States, supra.*

Generally speaking, "exigent circumstances" may be said to exist when the demands of the occasion reasonably call for an immediate police response. Thus, a warrantless entry may be justified when required to prevent imminent danger to life[5] or serious damage to property, or to forestall the likely escape of a suspect or the threatened removal or destruction of evidence. *See Dorman v. United States, supra; United States v. Reed, supra; United States v. Shye, supra; United States v. Campbell, supra; People v. Ramey, supra; Commonwealth v. Williams, supra; Laasch v. State, supra; Commonwealth v. Forde, supra.* The burden, of course, is upon the government to prove the justification, *McDonald v. United States*, 335 U.S. 451 (1948), and whether the requisite conditions exist is to be measured from the totality of the circumstances. *Commonwealth v. Forde, supra.* Moreover, the question of exigency is addressed to the factfinding function of the trial court, and its findings in that regard will not be set aside unless determined to be clearly erroneous. *United States v. Roselli, supra.*

The trial court denied the motion to suppress on the basis of its specific factual finding that "the police did knock and announce their office, but did not state their purpose nor demand entry before entering due to the 'scurrying' and 'crashing' sounds that they heard creating what they believed to be exigent circumstances." While this finding was addressed to an entirely different aspect of this case,[6] it is

---

[5] For example, where a grave offense has been committed and the suspect is reasonably believed to be armed and dangerous, time would be of the essence and exigent circumstances in that case would clearly exist. Immediate police action would not be proscribed where delay would likely endanger the officers' lives or the lives of others.

[6] The defendant has also advanced the argument that because the police failed to announce their purpose before entering, pursuant to HRS § 803-11, their failure to do so rendered the entry illegal. This argument is without merit. Under the circumstances of this case, it was enough that they did knock and audibly announce their

nevertheless supportive of police testimony regarding the conduct of the occupants following the police announcement. Being privy to reliable information that the suspect was in possession of contraband, the police were fully justified in believing from the sounds heard within the residence that flight was in progress and that there was a real danger that the contraband might be removed or destroyed. Prompt and immediate police response was clearly dictated by the circumstances.

The defendant takes the position, nevertheless, that the exigent circumstances upon which the police relied to justify the warrantless entry were an emergency of their own making. He correctly points out that the police, on probable cause, could have arrested the defendant at any time after he left the airport and before he entered his residence. The police could also have obtained a warrant before attempting to effect his arrest. Accordingly, he argues that the "scurrying" and "crashing" sounds heard within the premises were the foreseeable result of police conduct, and therefore could not supply the basis for the warrantless entry. *See United States v. Rosselli, supra; Commonwealth v. Forde, supra; United States v. Santana, supra,* at 48-49 (Marshall, J. dissenting). We disagree.

Firstly, it may not be automatically assumed that a suspect in the privacy and security of his home, when suddenly made aware of police presence at his front door, will react in much the same manner as did the occupants of the defendant's residence in this case. Not every suspect is in fact

---

office. Considering the nature of the reaction of the persons within the home to the sudden presence of the police, anything beyond the knocking and announcement of identity would have been a meaningless gesture. United States v. Wysong, 528 F.2d 345 (9th Cir. 1976); United States v. Manning, 448 F.2d 992 (2d Cir. 1971). Compare, Miller v. United States, 357 U.S. 301 (1958); Sabbath v. United States, supra. HRS § 803-11 provides:

Whenever it is necessary to enter a house to arrest an offender, and entrance is refused, the officer or person making the arrest may force an entrance by breaking doors or other barriers. But before breaking any door, he shall first demand entrance in a loud voice, and state that he is the bearer of a warrant of arrest; or if it is a case in which arrest is lawful without warrant, he shall substantially state that information in an audible voice.

guilty of the offense of which he is suspected, and not every suspect who is in fact guilty will attempt to escape or destroy valuable, albeit illicit, merchandise. Secondly, there is no requirement that the police must arrest a suspect once probable cause is established. They are under "no constitutional duty to call a halt to a criminal investigation the moment they have the minimum evidence to establish probable cause, a quantum of evidence which may fall far short of the amount necessary to support a criminal conviction." *Hoffa v. United States*, 385 U.S. 293, 310 (1966).

Police strategy in this case admittedly was designed to afford the defendant time to take the box to his ultimate destination and examine its contents before any move was made to take him into custody. Because knowing possession of contraband is an essential element of the offense of promoting detrimental drugs, *see* HRS §§ 712-1248, 1249, the police cannot be faulted for their strategy.[7] Moreover, an investigative visit to the defendant's residence, seeking his voluntary cooperation, would not have been constitutionally proscribed. This investigative tactic might, of course, have backfired for once the defendant entered his residence the police could not have, absent exigent circumstances, entered forcibly to effect a warrantless arrest. *United States v. Reed, supra; Dorman v. United States, supra; United States v. Calhoun, supra; United States v. Campbell, supra; United States v. Shye, supra; Vance v. North Carolina, supra; Commonwealth v. Forde, supra; People v. Ramey, supra; Laasch v. State, supra; Comm. v. Williams, supra. Contra: People v. Payton, supra.* Had the defendant simply elected to answer the police summons at the front door and thereafter refused admittance without a warrant, the police would not have been

---

[7] At trial the defendant disclaimed any prior knowledge of the contents of the box and testified that he thought it contained only his books and papers. Partly in this connection, the trial court instructed the jury as follows:

If you find that the Defendant had unknowingly received the alleged package of marijuana and had only a passing and fleeting control of the alleged marijuana package, after the discovery of its contents without sufficient period of time to have been able to terminate his possession, it is your duty to acquit.

able to enter without his permission. As it was, the conduct of those within the house provided the necessary justification for the warrantless entry. And once having entered lawfully and arrested the defendant on probable cause, the police were entitled to seize the evidence which was exposed to view on the bedroom floor.

II.

At the close of the State's case and again at the close of the evidence, the defendant moved for judgment of acquittal. Both times the trial court denied the motion. We sustain the court's denial as to Count I of the indictment, promoting detrimental drugs in the second degree, and overrule its denial as to Count II, promoting detrimental drugs in the third degree.

Having found the box and its contraband contents to have been properly admitted, and having reviewed the record, we are satisfied that there was sufficient evidence as to Count I from which the jury could, and did, fairly conclude guilt beyond a reasonable doubt. *State v. Rocker*, 52 Haw. 336, 475 P.2d 684 (1970). As to Count II, however, we hold that the motion for judgment of acquittal should have been granted. This charge was obviously predicated upon the police discovery of "a small package of marijuana seeds" in one of the closets within the defendant's residence.

In a criminal case, the State must prove every element of the crime beyond a reasonable doubt. *State v. Bannister*, 60 Haw. 658, 594 P.2d 133 (1979). The evidence was insufficient to show that the seeds recovered were in fact marijuana seeds. All this court has before it is Sgt. Carter's testimonial assertion that the package found in the defendant's closet were marijuana seeds. A police officer may qualify as an expert by reason of his experience or specialized training. *State v. Maupin*, 42 Ohio St.2d 473, 330 N.E.2d 708 (1975); *see also Miller v. State*, 168 Tex.Crim. 570, 330 S.W.2d 466 (1959); *see generally* 75 A.L.R.3d 717. There is nothing in the record, however, to show Sgt. Carter's expertise regarding the appearance and substance of marijuana seeds. Absent

proof of such expertise, courts have declined to accept testimony that a certain substance is marijuana. *People v. Kenny*, 30 N.Y.2d 154, 331 N.Y.S.2d 392 (1972); *Jenkins v. State*, 46 Ala. App. 719, 248 So.2d 758 (1971). Certain substances may be easily identifiable to the trained eye, such as is the case with marijuana leaves and plants. Seeds, however, tend to look similar, even to the trained eye.

Affirmed as to Count I of the Indictment. Reversed as to Count II.

*Paul Mark Clark* for defendant-appellant.

*John R. Ono*, First Deputy Prosecuting Attorney for plaintiff-appellee.