**FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER**

Electronically Filed
Intermediate Court of Appeals
CAAP-19-0000491
08-JUN-2020
07:53 AM

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

---o0o---

STATE OF HAWAI'I, Plaintiff-Appellant, v.
TIANA F.M. SAGAPOLUTELE-SILVA, Defendant-Appellee

CAAP-19-0000491

APPEAL FROM THE DISTRICT COURT OF THE FIRST CIRCUIT
(HONOLULU DIVISION)
(CASE NO. 1DTA-18-01227)

JUNE 8, 2020

LEONARD, PRESIDING JUDGE, CHAN AND WADSWORTH, JJ.

AMENDED OPINION OF THE COURT BY KATHERINE G. LEONARD, J.

This case involves the well-established constitutional principle that the prosecution may not use statements, whether exculpatory or inculpatory, stemming from the custodial interrogation of a defendant unless the defendant has first been advised of his or her <u>Miranda</u> rights. This rule applies in all criminal matters, even when the alleged crime is a misdemeanor traffic offense. That said, whether the questioning of a

defendant constitutes a custodial interrogation is dependent on the totality of the circumstances and, in many instances, persons who are temporarily detained pursuant to a traffic stop are not in custody for the purposes of <u>Miranda</u>. In addition, the right against self-incrimination is not necessarily implicated whenever a person suspected of criminal activity is compelled in some way to cooperate in developing evidence which may be used against him or her, such as when a defendant has performed a field sobriety test and testimony regarding the defendant's physical characteristics of coordination is offered against the defendant.

The defendant in this case was arrested for Excessive Speeding and Operating a Vehicle Under the Influence of an Intoxicant. Under the totality of the circumstances in this case, we hold that the defendant was in custody almost immediately after she was stopped by a police officer because, *inter alia*, the officer had probable cause to arrest her for the criminal offense of Excessive Speeding when he initially stopped her, and she was not free to leave from the time she was stopped. Upon approaching the defendant's vehicle, after briefly speaking with the defendant, the officer had a reasonable suspicion that she was intoxicated, but not probable cause, so the investigation proceeded to a field sobriety test. We hold that the defendant's physical performance on that test was not testimonial, and the defendant's responses to whether she would participate in the test and whether she understood the instructions were attendant to legitimate police procedures, and should not have been suppressed. We further hold, however, that the medical rule-out

questions posed by the officer were reasonably likely to elicit an incriminating response, and that the District Court did not err in suppressing those statements.  Finally, for the reasons stated below, we conclude that a statement made by the defendant in response to being informed of the reason that she was stopped was not the result of custodial interrogation and should not have been suppressed, but that a statement made by the defendant after she was arrested was fruit of the poisonous tree.  We affirm in part, vacate in part, and remand.

Plaintiff-Appellant the State of Hawaiʻi (**State**) appeals from the Notice of Entry of Judgment and/or Order and Plea/Judgment, filed on June 7, 2019 (**Judgment**), and Amended Notice of Entry of Judgment and/or Order and Plea/Judgment, filed on August 26, 2019 (**Amended Judgment**), in the District Court of the First Circuit, Honolulu Division (**District Court**),[1] which granted Defendant-Appellee Tiana F.M. Sagapolutele-Silva's (**Sagapolutele-Silva**) Motion to Suppress Statements.  The State also challenges Conclusions of Law (**COLs**) 7, 10, 13, and 16 through 21, of the District Court's July 11, 2019 Findings of Fact and Conclusions of Law and Order Granting Defendant's Motion to Suppress Statements (**Suppression Order**).

I.    BACKGROUND

On March 31, 2018, at about 2:50 a.m., Honolulu Police Department (**HPD**) Officer Franchot Termeteet (**Officer Termeteet**) was conducting speed enforcement, when Sagapolutele-Silva's

---

[1]    The Honorable Summer Kupau-Odo presided.

3

vehicle passed him.[2]  Sagapolutele-Silva appeared to be traveling at a high rate of speed, so he used his LIDAR and measured her speed at 77 miles per hour in a 45-mile-per-hour zone.  Officer Termeteet also observed Sagapolutele-Silva's vehicle drift between lanes and change lanes without a signal.  Sagapolutele-Silva passed at least two 45-mile-per-hour speed limit signs.  Officer Termeteet pulled her over to the shoulder of the road.

When Officer Termeteet approached Sagapolutele-Silva's driver's side window, he noticed the smell of alcohol coming from her breath and from within the vehicle, which held three other passengers.  Although not noted in the District Court's FOFs, Officer Termeteet testified that he also observed that Sagapolutele-Silva had red, watery, and glassy eyes.  Officer Termeteet asked Sagapolutele-Silva if she would be willing to participate in a standardized field sobriety test (**SFST**) and she agreed to participate.  Sagapolutele-Silva was not free to leave while she waited for a second officer, HPD Officer Bobby Ilae (**Officer Ilae**), to arrive.

When Officer Ilae arrived on the scene, Officer Termeteet apprised him of his observations, and Officer Ilae took over the investigation.  Officer Ilae also asked Sagapolutele-Silva if she would be willing to participate in an SFST and she again agreed.  Prior to administering the SFST, Officer Ilae asked Sagapolutele-Silva eight preliminary questions, which are known as medical rule-out questions:  Do you have any physical

---

[2]     The background facts are taken from the District Court's Findings of Fact (**FOFs**), which are set forth in the Suppression Order, and which are not challenged on appeal.

defects or speech impediments; are you taking medication; are you under the care of a doctor or dentist for anything; are you under the care of an eye doctor; are you epileptic or diabetic; do you have an artificial or glass eye; do you wear corrective lenses; and are you are blind in either eye. Sagapolutele-Silva answered no to all of these questions, which are intended to see if there is a medical reason that might cause a person to perform poorly on the SFST, if an impairment is medically related, or if there is a medical emergency.

The SFST consists of three tests and prior to administering them, Officer Ilae gave Sagapolutele-Silva instructions, asked her if she understood the instructions, and asked her if she had any questions. Sagapolutele-Silva was not advised of her Miranda rights at any point. At the conclusion of the SFST, Sagapolutele-Silva was arrested, and she told Officer Ilae that she had been drinking beers, but her friends were more impaired.

Sagapolutele-Silva filed, *inter alia*, a motion to suppress statements and a motion *in limine*. The District Court granted Sagapolutele-Silva's motion *in limine* to suppress her breath test results. At the hearing on the motion to suppress statements, Officers Termeteet and Ilae testified. After the hearing concluded, in addition to the above, the District Court found (and concluded) that Officer Termeteet had probable cause to arrest or cite Sagapolutele-Silva for the petty misdemeanor

offense of Excessive Speeding[3/] as soon as he stopped her vehicle, Sagapolutele-Silva was also the focus of an Operating a Vehicle Under the Influence of an Intoxicant (**OVUII**) investigation, and even prior to her exiting her vehicle, she was not free to leave. The District Court's challenged COLs state:

> 7.  At the time that Defendant was sitting in her vehicle, prior to the administration of the SFST, she was not free to leave, she was the focus of an OVUII investigation and officers had probable cause to arrest [h]er for at least Excessive Speeding.  Officer Termeteet and Ilae did not need the results of the SFST to arrest and/or cite Defendant for Excessive Speeding.  Legal custody had attached.
>
> . . . .
>
> 10.  Asking Defendant if she was willing to participate in the SFST constituted custodial interrogation because she was not free to leave, she was the focus of an OVUII investigation and officers had probable cause to arrest her.  Asking a person if they would be willing to participate in a SFST is reasonably likely to elicit an incriminating response.  For example, refusing to participate in the SFST can be used at trial to show consciousness of guilt pursuant to State v. Ferm, 94 Haw. 17 (2000).
>
> . . . .
>
> 13.  The MRO questions in this case constituted custodial interrogation and were reasonably likely to elicit incriminating responses.  By answering "no" to all the MRO questions, the State will likely use the responses to establish that Defendant did not have any physical or medical ailments that could have affected the results of the SFST.  Hence, all of the results of the SFST were caused by impairment by an intoxicant.
>
> . . . .

---

[3/]     Hawaii Revised Statutes (**HRS**) § 291C-105 (year) provides, in relevant part:

> **§ 291C-105  Excessive speeding.**  (a)  No person shall drive a motor vehicle at a speed exceeding:
> (1)   The applicable state or county speed limit by thirty miles per hour or more; or
> (2)   Eighty miles per hour or more irrespective of the applicable state or county speed limit.
> . . . .
>
> (c)  Any person who violates this section shall be guilty of a petty misdemeanor[.]

16. Officer Ilae's questioning during the SFST as to whether Defendant understood the instructions was reasonably likely to elicit an incriminating response. For example, if answered "no," it would be commentary on her mental faculties and ability to understand the instructions. If Defendant answered "yes," and did not perform the test as instructed, her "yes" response could be used against her at trial to show her mental faculties were impaired.

17. Defendant's agreement to take the SFST is suppressed and all evidence obtained after the agreement is fruit of the poisonous tree.

18. Defendant's responses to the MRO questions are suppressed and all evidence obtained by HPD after the MRO questions are suppressed as fruit of the poisonous tree.

19. Defendant's answer that she understood the instructions during the SFST is suppressed and the SFST is suppressed as fruit of the poisonous tree.

20. Defendant's statements while she was still in the vehicle in response to Termeteet's statement as to why she was being stopped is suppressed.

21. Defendant's statements to Officer Ilae after the SFST is suppressed as fruit of the poisonous tree.

The State timely filed a notice of appeal.

## II. POINT OF ERROR ON APPEAL

The State raises a single point of error on appeal, contending that the District Court erred in the challenged COLs and the Suppression Order because Sagapolutele-Silva was not in custody or seized until after she took the SFST and was arrested for OVUII, in violation of HRS § 291E-61(a)(1) (Supp. 2018).[4]

---

[4] HRS § 291E-61(a) states, in relevant part:

**§291E-61 Operating a vehicle under the influence of an intoxicant.** (a) A person commits the offense of operating a vehicle under the influence of an intoxicant if the person operates or assumes actual physical control of a vehicle:

(1) While under the influence of alcohol in an amount sufficient to impair the person's normal mental faculties or ability to care for the person and guard against casualty[.]

7

III. <u>APPLICABLE STANDARDS OF REVIEW</u>

> The proponent of the motion to suppress has the burden of establishing, by a preponderance of the evidence, that the statements or items sought to be excluded were unlawfully secured and that his or her right to be free from unreasonable searches or seizures was violated under the fourth amendment to the United States Constitution and article I, section 7 of the Hawaiʻi Constitution.

<u>State v. Estabillio</u>, 121 Hawaiʻi 261, 269, 218 P.3d 749, 757 (2009) (citations omitted).

A ruling on a motion to suppress is reviewed *de novo*, and the appellate court must look at the entire record on appeal to determine whether the ruling was right or wrong. <u>State v. Joseph</u>, 109 Hawaiʻi 482, 493, 128 P.3d 795, 806 (2006). The District Court's COLs are also reviewed *de novo*. <u>See</u> <u>id.</u>

IV. <u>DISCUSSION</u>

The State primarily contends that the District Court erred in suppressing Sagapolutele-Silva's responses to the medical rule-out questions because she was not in custody or interrogated before the SFST had been administered and she was arrested for OVUII.

In <u>State v. Wyatt</u>, 67 Haw. 293, 687 P.2d 544 (1984), the Hawaiʻi Supreme Court analyzed, *inter alia*, whether the roadside questioning of a defendant who had been stopped for a traffic violation constituted a custodial interrogation for the purposes of applying <u>Miranda</u>:

> "The government seeking to punish an individual must produce the evidence against her by its own independent labors, rather than by the cruel, simple expedient of compelling it from her own mouth." <u>Miranda v. Arizona</u>, 384 U.S. 436, 460 (1966); <u>State v. Russo</u>, 67 Haw. 126, 131-32, 681 P.2d 553, 558 (1984). And the rule that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against

> self-incrimination," <u>Miranda</u>, 384 U.S. at 444 (emphasis added), applies even where the object of the prosecution is to establish the commission of "a misdemeanor traffic offense." <u>Berkemer v. McCarty</u>, 468 U.S. 420, 429 (1984).
>
> Whether interrogation was carried on in a custodial context is dependent on the totality of circumstances surrounding the questioning, <u>State v. Paahana</u>, 66 Haw. 499, 503, 666 P.2d 592, 595 (1983); <u>State v. Melemai</u>, 64 Haw. 479, 481, 643 P.2d 541, 544 (1982). The relevant circumstances, we have said, include "the time, place and length of the interrogation, the nature of the questions asked, [and] the conduct of the police at the time of the interrogation." <u>Paahana</u>, *supra*. But the ultimate test is whether the questioning was of a nature that would 'subjugate the individual to the will of his examiner' and thereby undermine the privilege against compulsory self-incrimination. <u>Rhode Island v. Innis</u>, 446 U.S. 291, 299 (1980) (quoting <u>Miranda</u>, 384 U.S. at 457–58, 86 S.Ct. at 1618–19).

<u>Wyatt</u>, 67 Haw. at 298, 687 P.2d at 549 (citations edited; footnote and brackets omitted).

In <u>Wyatt</u>, after the defendant's vehicle was stopped for a traffic violation and she was briefly detained, a police officer asked her if she had been drinking. <u>Id.</u> at 297, 687 P.2d at 548. Although the stop and resulting brief detention constituted a seizure within the meaning of the Fourth and Fourteenth Amendments, the seizure was not unreasonable. <u>Id.</u> at 300, 687 P.2d at 549. Nothing in the record suggested that the question was posed in a coercive or custodial setting. <u>Id.</u> at 301, 687 P.2d at 550. Under the circumstances, the supreme court concluded that <u>Miranda</u> warnings were not required before the defendant was asked if she had been drinking. <u>Id.</u>; <u>see also</u> <u>State v. Ah Loo</u>, 94 Hawaiʻi 207, 211, 10 P.3d 728, 732 (2000) (a defendant is not in custody merely before he or she has been seized in conjunction with a traffic stop).[5] The supreme court

---

[5] In <u>Ah Loo</u>, the supreme court reiterated that "when an officer lawfully 'seizes' a person in order to conduct an investigative stop, the officer is not required to inform that person of his or her <u>Miranda</u> rights
(continued...)

in Wyatt further concluded that the SFST that the defendant performed was not constitutionally infirm because the test sought only an exhibition of her physical characteristics of coordination, rather than communications or testimony, even though its purpose was to gather evidence of criminal conduct. Wyatt, 67 Haw. at 302-03, 687 P.2d at 551.

In State v. Kaleohano, 99 Hawaiʻi 370, 56 P.3d 138 (2002), the supreme court examined whether the defendant in that case was entitled to Miranda warnings when she was questioned by an officer after her vehicle was stopped because the officer suspected that the driver was impaired. The court first observed that the defendant was not in custody for the purposes of Miranda simply due to the valid traffic stop. Id. at 376, 56 P.3d at 144. The court noted, however, that if probable cause to arrest or sustained and coercive questioning were present, then questions posed by the police could amount to custodial interrogation. Id. at 377, 56 P.3d at 145. The supreme court then considered whether there was probable cause to arrest the defendant for driving while impaired, *i.e.*, whether "the facts and circumstances within the knowledge of police officers and of which they had reasonably trustworthy information were sufficient in themselves to warrant a man or woman of reasonable caution to believe that a crime was being committed." Id. (citation omitted). Although the officer had observed the defendant's car

---

[5]/(...continued)
before posing questions that are reasonably designed to confirm or dispel—as briefly as possible and without any coercive connotation by either word or conduct—the officer's reasonable suspicion that criminal activity is afoot." 94 Hawaiʻi at 212, 10 P.3d at 733.

swerve within its lane and cross the dividing line, and her eyes were red and glassy, the supreme court noted that imperfect driving and red eyes, particularly in light of defendant's claim that it was late and she was tired, were consistent with innocent activity and were insufficient to support a finding of probable cause. Id. Because there was no probable cause to arrest the defendant, and in light of the fact that the officer did not subject the defendant to sustained and coercive questioning, the supreme court concluded that the officer was not required to give her a Miranda warning prior to asking her if she had been drinking. Id. at 377-78, 56 P.3d at 145-46.

Turning to the case before us, we must examine whether, under the totality of the circumstances here, Sagapolutele-Silva's suppressed statements stemmed from custodial interrogation. Sagapolutele-Silva was not in custody merely because she was seized in connection with a traffic stop. Ah Loo, 94 Hawaiʻi at 211, 10 P.3d at 732. To determine whether an interrogation is custodial, the totality of the circumstances analysis focuses on "'the place and time of the interrogation, the length of the interrogation, the nature of the questions asked, the conduct of the police, and [any] other relevant circumstances[.]'" Id. at 210, 10 P.3d at 731 (citing State v. Melemai, 64 Haw. 479, 481, 643 P.2d 541, 544 (1982)); see also State v. Kazanas, 138 Hawaiʻi 23, 35, 375 P.3d 1261, 1273 (2016) (reiterating same). In this regard, the supreme court has acknowledged that "no precise line can be drawn" between "custodial interrogation," on the one hand, and "permissible

general on-the-scene questioning," on the other. Ah Loo, 94 Hawaiʻi at 210, 10 P.3d at 731 (citing State v. Patterson, 59 Haw. 357, 362, 581 P.2d 752, 755-56 (1978)) (brackets omitted). Custodial interrogation is comprised of two components, "interrogation" and "custody." Kazanas, 138 Hawaiʻi at 35, 375 P.3d at 1273. The totality of the circumstances test applies to custodial interrogation, "in the sense that the defendant is deprived of his or her freedom of action in any significant way." Id. In contrast, "the touchstone in analyzing whether 'interrogation' has taken place is whether the police officer 'should have known that his or her words and actions were reasonably likely to elicit an incriminating response from the defendant.'" Id. at 38, 375 P.3d at 1276 (internal brackets and citation omitted).

Here, we first consider whether the District Court erred by finding that there was probable cause to arrest Sagapolutele-Silva for Excessive Speeding when she was initially stopped.

> For the offense of excessive speeding, the prosecution must prove beyond a reasonable doubt that the defendant "[drove] a motor vehicle at a speed exceeding: (1) The applicable state or county speed limit by thirty miles per hour or more; or (2) [e]ighty miles per hour or more irrespective of the applicable state or county speed limit. HRS § 291C-105(a) (brackets added).

State v. Assaye, 121 Hawaiʻi 204, 216, 216 P.3d 1227, 1239 (2009).

Excessive Speeding is a criminal offense for which the State must prove a defendant acted intentionally, knowingly, or recklessly. State v. Gonzalez, 128 Hawaiʻi 314, 324, 288 P.3d 788, 798 (2012).

12

> Probable cause to arrest without a warrant exists when the arresting officer has reasonable grounds to believe, from facts and circumstances personally known to him, or of which he has trustworthy information, that the person arrested has committed or is committing an offense. State v. Barnes, 58 Haw. 333, 568 P.2d 1207 (1977).

State v. Lloyd, 61 Haw. 505, 509, 606 P.2d 913, 916 (1980).

In this case, Officer Termeteet testified that Sagapolutele-Silva was traveling 77 miles per hour based on the speed reading from his LIDAR, the incident occurred in a 45-mile-per-hour zone, and there were multiple 45-mile-per-hour speed limit signs in the area, with one sign right before his location near an on-ramp, where Sagapolutele-Silva passed him. Sagapolutele-Silva acknowledged that she was speeding in response to being informed of the reason she was stopped. Thus, we conclude that there was probable cause to arrest Sagapolutele-Silva for Excessive Speeding when she was initially stopped by Officer Termeteet.

That said, there is no requirement for the police to arrest a suspect once probable cause is established. Lloyd, 61 Haw. at 514, 606 P.2d at 919. Indeed, the police need not halt an investigation the moment they have the minimum evidence to establish probable cause because it may fall short of evidence necessary to support a criminal conviction. Id. (citing Hoffa v. United States, 385 U.S. 293, 310 (1966)). Nevertheless, "[a]n individual in police custody may not be subjected to interrogation without first being advised of his Miranda rights." Melemai, 64 Haw. at 481, 643 P.2d at 543.

Under the totality of the circumstances in this case, Sagapolutele-Silva was in custody for Excessive Speeding. Id. at

481, 643 P.2d at 544. Officer Termeteet had probable cause to arrest Sagapolutele-Silva for Excessive Speeding when he initially stopped her. Sagapolutele-Silva admitted to speeding after she was informed she was stopped for speeding. As discussed below, upon his initial observations of Sagapolutele-Silva, Officer Termeteet had a reasonable suspicion that she was driving while intoxicated. Officer Termeteet stated Sagapolutele-Silva was not free to leave from the time she was stopped. Under the totality of the circumstances, the District Court did not err in COL 7 in concluding, *inter alia*, that legal custody had attached. Sagapolutele-Silva should have been given <u>Miranda</u> warnings prior to any interrogation.

Notwithstanding the foregoing, the investigation for OVUII in this case constituted a separate and distinct investigation, albeit related to the initial traffic stop, and it required an independent reasonable suspicion. <u>See</u> <u>generally</u> <u>Estabillio</u>, 121 Hawaiʻi at 273, 218 P.3d at 761. There was reasonable suspicion that Sagapolutele-Silva was operating a vehicle while intoxicated based upon her driving; her red, watery, and glassy eyes; and the smell of alcohol. <u>State v. Barrickman</u>, 95 Hawaiʻi 270, 274-77, 21 P.3d 475, 479-82 (App. 2001) (there was reasonable suspicion to investigate driving while intoxicated based on defendant's glassy eyes and smell of alcohol on breath). However, red and glassy eyes alone and imperfect driving are insufficient to establish probable cause to arrest a person for OVUII. <u>Kaleohano</u>, 99 Hawaiʻi at 377-78, 56 P.3d at 145-46.

As noted by the supreme court in <u>Kernan v. Tanaka</u>, 75 Haw. 1, 38 n.23, 856 P.2d 1207, 1226 n.23 (1993):

> Usually, the police administer a field sobriety test consisting of specific procedures when a driver has been stopped as a DUI suspect. If a driver does not exit voluntarily, the police must order him or her out of the vehicle even though probable cause to arrest may not have been established. Should the suspect fail the test, an arrest will ensue. Thus, it is the test failure that provides the police with probable cause to arrest. We do not require the police to have probable cause to arrest prior to the administration of the field sobriety test because such a requirement unduly burdens law enforcement.

"Field sobriety tests are designed and administered to avoid the shortcomings of casual observation." <u>Wyatt</u>, 67 Haw. at 302, 687 P.2d at 551. Here, Officer Termeteet did not initially have probable cause to arrest Sagapolutele-Silva for OVUII based upon noticing she had red, watery, and glassy eyes, and an odor of alcohol about her. And, the right against self-incrimination is not necessarily implicated whenever a person suspected of criminal activity is compelled in some way to cooperate in developing evidence which may be used against her, such as when a driver is asked to participate in a SFST. <u>Id.</u> As discussed above, the <u>Wyatt</u> court held that since performance on an SFST was neither communication nor testimony, the trial court did not err by refusing to suppress the officer's SFST observations. <u>Id.</u> at 301-03, 687 P.2d at 550-51.

In addition, in <u>Pennsylvania v. Muniz</u>, 496 U.S. 582, 605 (1990), the United States Supreme Court rejected the contention that <u>Miranda</u> warnings are required prior to an inquiry as to whether a defendant understood SFST instructions, because the "focused inquires were necessarily 'attendant to' the police procedure held by the court to be legitimate." Accordingly,

asking Sagapolutele-Silva whether she understood the instructions to the SFST did not implicate her right to self-incrimination. Thus, we conclude that the District Court erred by suppressing Sagapolutele-Silva's response to whether she would participate in the SFST, whether she understood the instructions to the SFST, and the officer's observations of her performance on the SFST. Therefore, COLs 10, 16, 17, and 19 are wrong.

However, due to Sagapolutele-Silva being in custody for Excessive Speeding, the medical rule-out questions, which were asked in relation to the OVUII investigation here, constituted interrogation. As other courts have observed, the failure to provide a <u>Miranda</u> warning when required for one crime will taint a subsequent interrogation even if the interrogation relates to a different crime for which <u>Miranda</u> warnings were not yet required, if a defendant is still in custody. <u>See</u> <u>Mathis v. United States</u>, 391 U.S. 1, 2, 4-5 (1968) (noting that there is "nothing in the <u>Miranda</u> opinion which calls for a curtailment of the warnings to be given persons under interrogation by officers based on the reason why the person is in custody"); <u>see</u> <u>also</u>, e.g., <u>People v. Bejasa</u>, 140 Cal. Rptr. 3d 80, 91 (Cal. Ct. App. 2012); <u>State v. Lawler</u>, No. L-96-223, 1997 WL 77511, **1-2 (Ohio Ct. App. Feb. 21, 1997); <u>State v. Lien</u>, No. 32443-5-III, 2016 WL 4267689 (Wash. Ct. App. Aug. 11, 2016). Here, Officer Ilae testified that Sagapolutele-Silva was not free to leave during his encounter with Sagapolutele-Silva in connection with his investigation into OVUII, and there was nothing to indicate Sagapolutele-Silva was free to go about her business before being

questioned about OVUII.  Sagapolutele-Silva was in custody for Excessive Speeding when the medical rule-out questions were posed.

"[T]he touchstone in analyzing whether interrogation has taken place is whether the police officer should have known that his [or her] words and actions were reasonably likely to elicit an incriminating response from the defendant."  Kazanas, 138 Hawai‘i at 38, 375 P.3d at 1276 (citation and quotation marks omitted).  Relying upon Rhode Island v. Innis, 446 U.S. 291, Kazanas reiterated that "interrogation consists of any express question - or, absent an express question, any words or conduct - that the officer knows or reasonably should know is likely to elicit an incriminating response."  Id. (citation and internal quotation marks omitted).  An incriminating response is any response, either inculpatory or exculpatory.  Innis, 446 U.S. at 301 n.5.  In contrast, a physical inability to articulate words in a clear manner due to lack of muscular coordination of the tongue and mouth is not testimonial evidence for purposes of self-incrimination.  Muniz, 496 U.S. at 590-91.

We note that in Gibson v. Commonwealth, 706 S.E.2d 541, 545 (Va. App. 2011), a defendant claimed that his response to a question whether he had any physical problems prior to administration of a SFST amounted to custodial interrogation for which he should have received Miranda warnings.  The Gibson court held that the question fell under the necessarily-attendant-to-a-legitimate-police-procedure exception in Muniz, because the "physical problems" question was sufficiently analogous to asking

whether the defendant understood the instructions as to how each part of the SFST was to be performed, was meant to assure the validity of the test, and was not to elicit an incriminating response. Id. We decline to adopt and apply this reasoning to the medical rule-out questions at issue here.

In this case, the District Court's FOFs 15 and 16 identified the medical rule-out questions posed to Sagapolutele-Silva as follows:

> i. Do you have any physical defects or speech impediments?
> ii. Are you taking any medications?
> iii. Are you under the care of a doctor or dentist for anything?
> iv. Are you under the care of an eye doctor?
> v. Do you have an artificial or glass eye?
> vi. Are you epileptic or diabetic?
> vii. Are you blind in either eye?
> viii. Do you wear corrective lenses?

Based on, *inter alia*, our review of Muniz, we conclude that the medical rule-out questions posed to Sagapolutele-Silva were reasonably likely to elicit an incriminating response and, therefore, constituted interrogation. As held in Muniz, "[a]n accused's communication must itself, explicitly or implicitly, relate a factual assertion or disclose information" in order to be testimonial. Muniz, 496 U.S. at 594 (citation omitted). The privilege against self-incrimination is "to spare the accused from having to reveal, directly or indirectly, his knowledge of facts relating him to the offense or from having to share his thoughts and beliefs with the Government." Id. at 595. In Muniz, an officer asked a defendant if he knew the date of his sixth birthday to which the defendant responded: "No, I don't." Id. at 586. The Muniz court held the question constituted

interrogation because it required a testimonial response.  Id. at 600.  The Muniz court stated:

> In contrast, the sixth birthday question in this case required a testimonial response.  When Officer Hosterman asked Muniz if he knew the date of his sixth birthday and Muniz, for whatever reason, could not remember or calculate that date, he was confronted with the trilemma.  By hypothesis, the inherently coercive environment created by the custodial interrogation precluded the option of remaining silent, see n. 10, *supra.*  Muniz was left with the choice of incriminating himself by admitting that he did not then know the date of his sixth birthday, or answering untruthfully by reporting a date that he did not then believe to be accurate (an incorrect guess would be incriminating as well as untruthful).  The content of his truthful answer supported an inference that his mental faculties were impaired, because his assertion (he did not know the date of his sixth birthday) was different from the assertion (he knew the date was (correct date)) that the trier of fact might reasonably have expected a lucid person to provide.  Hence, the incriminating inference of impaired mental faculties stemmed, not just from the fact that Muniz slurred his response, but also from a testimonial aspect of that response.

Id. at 598-99.

Here, although Officer Ilae stated that the purpose of the medical rule-out questions was to assist him in evaluating Sagapolutele-Silva's physical performance on the SFST, which is non-testimonial evidence, his subjective intent is not relevant.  Kazanas, 138 Hawaiʻi at 40, 375 P.3d at 1278 (notwithstanding the officer's subjective intent to conduct small talk, asking defendant how his night went in order to calm him down constituted interrogation because the question was likely to elicit an incriminating response after being arrested).  The medical rule-out questions required a testimonial response that disclosed facts relating to the offense of OVUII and that was reasonably likely to assist the police in determining whether Sagapolutele-Silva was under the influence of an intoxicant by either admitting or denying there were other causes that could

explain her actions. A negative response to all of the questions is testimonial, and combined with physical characteristics of impairment, supports an incriminating inference of impairment. Similarly, a positive response to whether a defendant is taking any medicines, in some instances, may constitute an incriminating statement.

> Where an individual is being subjected to custodial interrogation, he may not be asked any questions without his first being advised of his right to remain silent, that anything he says can and will be used against him, that he has the right to have his attorney present, and that if he cannot afford counsel, one will be appointed for him prior to any interrogation. Miranda v. Arizona, 384 U.S. 436, 467-474 (1966); State v. Santiago, 53 Haw. 254, 492 P.2d 657 (1971). "Custodial interrogation" means "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." 384 U.S. at 444.

State v. Kalai, 56 Haw. 366, 368, 537 P.2d 8, 11 (1975).

Sagapolutele-Silva was in custody. She had not been given Miranda warnings. The medical rule-out questions constituted interrogation. Thus, we conclude that her responses to those questions should have been suppressed and the District Court did not err in so concluding in COLs 13 and 18.

We next turn to whether the District Court erred by suppressing Sagapolutele-Silva's other statements to Officers Termeteet and Ilae. The FOFs and COLs contained in the Suppression Order do not specifically identify what statements Sagapolutele-Silva made "while still in the vehicle in response to [Officer] Termeteet's statement as to why she was being stopped," or "Defendant's statements to Officer Ilae after the SFST." However, it appears from the record that the only statement Sagapolutele-Silva made to Officer Termeteet in response to him informing her she was being stopped for speeding

was an acknowledgment she was speeding.  After the SFST was complete and Officer Ilae informed Sagapolutele-Silva she was under arrest, Sagapolutele-Silva admitted to drinking a few beers.

Generally, informing a defendant of the reason for being stopped or arrested does not constitute custodial interrogation likely to elicit an incriminating response.  See, e.g., United States v. Benton, 996 F.2d 642, 643-44 (3d Cir. 1993); see also, e.g., State v. Ikaika, 67 Haw. 563, 565, 698 P.2d 281, 283 (1985) (spontaneous admissions, made in the absence of any police questioning, were admissible); cf. Kazanas, 138 Hawaiʻi at 38, 375 P.3d at 1276 (asking the defendant how his night was going, under the circumstances of his detainment, was reasonably likely to elicit his incriminating response and therefore constituted interrogation).[6]  Without more, simply informing a person of the reason for his or her arrest does not constitute interrogation.  Officer Termeteet informed Sagapolutele-Silva that he stopped her for speeding as soon as he approached her vehicle, and Sagapolutele-Silva responded by spontaneously admitting she was speeding.  Even under the circumstances of this case, where there was probable cause to

---

[6]     Interrogation does not include "words or actions on the part of the police [that are] normally attendant to arrest and custody."  Innis, 446 U.S. at 301.  "[W]hen an officer informs [a suspect] of [the] circumstances" of his arrest "or explain[s] . . . evidence against him," "this information may be considered normally attendant to arrest and custody."  United States v. Moreno-Flores, 33 F.3d 1164, 1169 (9th Cir. 1994) (quoting United States v. Crisco, 725 F.2d 1228, 1232 (9th Cir. 1984)); see also id. ("[I]nterrogation is not so broad as to capture within Miranda's reach all declaratory statements by police officers concerning the nature of the charges against the suspect and the evidence relating to those charges."  (alteration in original) (quoting United States v. Payne, 954 F.2d 199, 202 (4th Cir. 1992)))."  United States v. Berckmann, 2018 WL 1527824, *14 (D. Haw. Mar. 28, 2018) (Order).

arrest Sagapolutele-Silva for Excessive Speeding, Officer Termeteet informing her that she was stopped for speeding would, at most, be comparable to informing Sagapolutele-Silva she was being arrested for Excessive Speeding. It did not constitute interrogation. Therefore, COL 20 is wrong.

The District Court's suppression of Sagapolutele-Silva's statement to Officer Ilae after administration of the SFST was based upon the fruit of the poisonous tree doctrine. As the District Court recognized, "[t]he fruit of the poisonous tree doctrine prohibits the use of evidence at trial <u>which comes to light as a result of the exploitation of a previous illegal act of the police</u>." <u>State v. Fukusaku</u>, 85 Hawaiʻi 462, 475, 946 P.2d 32, 45 (1997) (citation and internal quotation marks omitted; emphasis added).

With respect to the basis for the District Court's ruling, the illegal act committed by the police in this case was asking the medical rule-out questions, after Sagapolutele-Silva was in custody, without first advising her of her <u>Miranda</u> rights, as discussed above. As the supreme court discussed in <u>State v. Trinque</u>, 140 Hawaiʻi 269, 282, 400 P.3d 470, 483 (2017), the common thread in its jurisprudence regarding what constitutes exploitation that taints subsequently obtained evidence is that the "prior illegality contributed in the subsequent obtainment of evidence, statements, or confessions", *i.e.*, that the State failed to show "that the discovery of the challenged evidence was not a benefit derived from the prior illegality." The State presented no evidence that Sagapolutele-Silva's statements to

Officer Ilae were attenuated by a lapse of time or intervening circumstances.  See id. at 281, 400 P.3d at 482.[7/]  Although there is nothing in the record to suggest that the officer's misconduct was purposeful or flagrant, we cannot conclude that the District Court erred in concluding that Sagapolutele-Silva's spontaneous admission that she had been drinking, in response to being told she was under arrest for OVUII, shortly after the medical rule-out questions were posed, constitutes fruit of the poisonous tree.  Therefore, we conclude that the District Court did not err in COL 18 and 21.[8/]

V.   CONCLUSIONS

For these reasons, the June 7, 2019 Judgment and the August 26, 2019 Amended Judgment are affirmed in part and vacated in part.  This case is remanded to the District Court for further proceedings.

On the briefs:

Brian R. Vincent,
Deputy Prosecuting Attorney,
City and County of Honolulu,
for Plaintiff-Appellant.

Alen M. Kaneshiro,
for Defendant-Appellee.

/s/ Katherine G. Leonard
Presiding Judge

/s/ Derrick H.M. Chan
Associate Judge

/s/ Clyde J. Wadsworth
Associate Judge

---

[7/]   Hawaiʻi appellate courts have repeatedly held that "whether a confession is sufficiently attenuated from the illegality depends on the facts of a particular case, and factors relevant to the analysis include (1) the temporal proximity between the official misconduct and the subsequently procured statement or evidence, (2) the presence of intervening circumstances, and (3) the purpose and flagrancy of the official misconduct."  Trinque, 140 Hawaii at 281, 400 P.3d at 482 (citations omitted).

[8/]   As set forth above, COL 21 refers to Sagapolutele-Silva's "statements to Officer Ilae after the SFST" as being suppressed as fruit of the poisonous tree.  To be clear, our conclusion that COL 21 is not wrong is based on the fact that this time period is also the time period after the medical rule-out questions were posed and not based on any infirmity with the SFST itself.